Laycock vs. Parker.

LAYCOCK, Respondent, vs. PARKER, imp., Appellant.

*February 23 — May 16, 1899.*

*Appeal: Printed case: Arrangement of evidence: Building contract: Evidence: Architects: Agency: Husband and wife: Lateral support: Interest: Unliquidated demands: Foreclosure of mechanic's lien: Judgments.*

| | |
|---|---|
| 103 | 161 |
| f103 | 355 |
| 103 | 432 |
| 104 | 38 |
| 103 | 161 |
| 105 | 127 |
| 103 | 161 |
| d107 | 17 |
| f107 | 168 |
| 103 | 161 |
| 109 | 164 |
| 103 | 161 |
| 111 | 10193 |
| 111 | 10196 |
| 103 · | 161 |
| 116 | 10142 |
| 116 | 2261 |

1. When the evidence is extremely voluminous, arranging the printing to conform to appellant's assignments of error makes difficult its examination on other lines, and is not to be approved.

2. The appellate court upon printed evidence, confused in its arrangement, without opportunity to judge from observation as to the fairness, intelligence, and credibility of witnesses, will not attempt to correct conclusions reached by the trial court, as to the weight or preponderance of evidence on specific items or subjects, unless the error in that respect appears with great clearness and certainty.

3. When, as a result of general findings, the appellate court would reach the same general conclusion as did the trial court, the judgment will not be reversed.

4. Where the conduct of a husband and wife is such as to raise an inference that she had full knowledge that he was assuming to act for her, in the erection of a building on her land, his conduct in so doing, and her silence and nonattendance, are evidence of the actual understanding between them that he should take full charge.

5. Where, under the specifications of a building contract, brick were to be laid close and joints thoroughly flushed with mortar, and plastering to be of a certain number of coats and applied in a certain manner, the findings of the trial court, on conflicting testimony, that the work had been done according to the specifications, will not be reversed, the method of performing the work being open and obvious, and under the observation of the owner's agent and the architect, and no complaint having been made during the progress of the work.

6. The presence of extraneous matter causing stoppage of a water pipe, and overflow of water into the premises of a tenant, in the absence of any evidence connecting the contractor or his workmen with introducing the refuse which was found in the pipe, does not constitute ground for finding him liable for injuries resulting to the tenant.

VOL. 103 — 11

Laycock vs. Parker.

7. Lateral support from a neighbor's soil, as a right, applies only to soil in its natural condition not burdened with buildings.

8. Claims against the owner, by adjoining owners, based upon the removal of the lateral support for the soil under their buildings, not having been paid, and no steps having been taken to enforce them, cannot be counterclaimed against a builder.

9. In such case the contractor is only liable for an injury due to his negligent or wanton acts, not necessarily incident to the contract or plan of work, and then directly to the injured party.

10. Where a demand is capable of ascertainment by reference to reasonably certain market values of the various items, and has been duly and adequately presented and its payment demanded before suit commenced, the claimant is entitled to interest from the time of such demand.

11. In an action to foreclose a mechanic's lien the proceedings are wholly statutory, and must conform to the statute regulating the practice in such actions: and where there is no prayer for such relief in the complaint, and the judgment contains no provision for ascertaining a deficiency upon the sale or for rendering personal judgment therefor, it is reversible error to enter a judgment, which, in form, is a personal judgment against the defendant, for the amount found to be due.

12. In such case, the court will not, on the ground that the appeal should have been from the erroneous part only, decline to consider an assignment of error based on the *form* of the judgment, when the judgment is attacked on other grounds.

13. In such case a reversal of the entire judgment is not necessary; it is proper practice to correct the error by a modification.

APPEAL from a judgment of the circuit court for Eau Claire county: W. F. BAILEY, Circuit Judge. *Modified and affirmed.*

On June 24, 1893, the plaintiff and another entered into a building contract with the defendant *Anna E. Parker* to erect a store and office building in the city of Eau Claire upon premises belonging to her. The contract and specifications were prepared by architects, and were in great detail. Amongst other things, it was provided that the work should be done under the direction and to the satisfaction of the architects named, and should be completed by September 15, 1893; that alterations should only be made upon written

order of the architects, and, when so made, the value of the
work added or omitted should be computed by the archi-
tects, and the amounts so ascertained added to or deducted
from the contract price, with right of arbitration in case of
dispute.    This section was supplemented by the specifica-
tions which provided that the owner should be at liberty to
make such changes as she should deem necessary without
vitiating the contract, and that proper allowance should be
made at the time of such changes or at settlement; that the
architects should figure thereon, and their estimates should
be binding upon all parties; that in case of obstruction or
delay from various causes, including acts of the owner, the
time of completion should be extended for a period equiva-
lent to the time lost; that the contract price should be $18,000,
to be paid in certain specified instalments upon certificates
furnished by the architects to the owner; and that no cer-
tificate, except the final one, should be considered to be an
acceptance of defective work.    Other provisions in detail
may best be stated in the course of the opinion.    The work
proceeded, the two contractors, as between themselves, di-
viding the different kinds thereof.    Various modifications
and changes were made by direction of the defendant E. H.
Parker, husband of the defendant *Anna E.*, who, the court
found, in all things was authorized to and did act as her
agent.    The building was found by the court to have been
substantially completed about the 26th day of January, 1894,
and the last work thereon was done May 31, 1894, the plaint-
iff meanwhile having paid $12,995.01.

It was also found by the court that at the final completion
of the building, as claimed by the plaintiff, E. H. Parker and
the architect carefully inspected the same, and, at the com-
pletion of such inspection, Parker, in the presence of the
architect, after certain small omissions had been pointed out
and their remedy arranged for, declared himself fully satis-
fied, and that defendant accepted the building as completed

and occupied the same. It is further found that the stipulations of the contract with reference to the issue of certificates by the architects as a condition precedent to payment, and the fixing of the value of changes by computation of the architects, as well as the ordering them in writing, had been waived by the parties. It was also found that such certificates had not been issued, and that the architects at the time of the trial were dissatisfied with the performance of the contract, but that there was no evidence from which to find that they were dissatisfied at the time of the completion of the work; and the court expressly refused to find that the dissatisfaction of the architects was honest or in good faith. An opinion filed and included in the record serves to give such refusal very much the effect of an affirmative finding that such dissatisfaction was dishonest and not in good faith.

After suit had been commenced, a computation in great detail was made of all omissions and changes by E. H. Parker and a mechanic employed by him, which computation was in form adopted by the architects and their signatures affixed thereto, as to which transaction it is found that the computations were not made by either of the architects, and that they did not act honestly or in good faith in signing such computations of the amounts which should be deducted for omissions and added for extras, and that the amounts as certified to by them are grossly incorrect and unjust; that the parties, after the completion of the work and before commencement of suit, entered into negotiations as to the amount due, and in the course of their attempted settlement full statements of account were presented and items examined, and amounts were proposed on each side in full settlement of all matters between them; and that the amounts which should be deemed extras, and the amounts which should be deducted for omissions, were agreed upon and settled without intimation of any incompleteness or omission to be supplied. E. H. Parker was in continual attendance through-

out the construction of said building.    He occupied an office across the street, from which he could and did observe the work continuously, and, in addition, was upon the premises inspecting all the details of the work almost daily, and often several times per day.    He showed upon the trial full understanding and familiarity with the plans and specifications, and with the methods of doing the various kinds of work, and ability to make computations of extras and omissions. After the completion of the work, the other contractor assigned the balance due him, together with his rights to a lien, to the plaintiff, of which notice was given the owner in due form, and the petition for lien was duly filed, and suit commenced within six months after May 31st.

The court allowed the plaintiff for balance due upon his contract $5,004.99, and for extras $1,757.23, and allowed the defendant upon counterclaim for omissions and substitutions made by direction of E. H. Parker, the agent, $469.39, and allowed her upon counterclaim by way of damages for delay in completion of the building, and for use of the heating plant, $283.41, resulting in a net finding in favor of the plaintiff of $6,009.42, upon which interest was allowed from the commencement of the suit, and adjudged a lien therefor. The form of the judgment was a personal judgment against the defendant *Anna E. Parker*, and an adjudication that the plaintiff have a lien therefor upon the premises, and that the same be sold in the manner provided by law, and the proceeds, after satisfying plaintiff's judgment, he brought into court to abide its further order.    The complaint contained no prayer for a personal judgment, and the judgment did not contain any provisions for ascertaining a deficiency upon the sale or for rendering personal judgment therefor.

For the appellant there were briefs by *H. H. Hayden* and *H. B. Walmsley*, and oral argument by *Mr. Walmsley*.    They contended, *inter alia*, that interest should not be allowed from the commencement of suit, on an unascertained and

unliquidated demand on contract. *Doyle's Adm'rs v. St. James' Church,* 7 Wend. 178; *Goff v. Rehoboth,* 2 Cush. 475; *Coburn v. Goodall,* 72 Cal. 498; *Swinnerton v. Argonaut L. & D. Co.* 112 Cal. 375; *Pengra v. Wheeler,* 24 Oreg. 532; *Hawley v. Dawson,* 16 Oreg. 344; *Hooper v. Patterson,* 32 Pac. Rep. 574; *Van Beuren v. Van Gaasbeck,* 4 Cow. 496; *McMaster v. State,* 108 N. Y. 542; *Mansfield v. N. Y. C. & H. R. R. Co.* 114 N. Y. 331; *McMahon v. N. Y. & E. R. Co.* 20 N. Y. 463; *McCollum v. Seward,* 62 N. Y. 316; *Crawford v. Mail & Exp. P. Co.* 22 App. Div. 54; *Sloan v. Baird,* 12 App. Div. 481; *McCormack v. Lynch,* 69 Mo. App. 524; *Laming v. Peters S. Co.* 71 Mo. App. 646; *Martin v. Stillman,* 53 N. Y. 615; *Bonesteel v. Orvis,* 22 Wis. 498; *Chapman v. C. & N. W. R. Co.* 26 Wis. 295; *Sweaney v. U. S.* 62 Wis. 396; *Arpin v. Burch,* 68 Wis. 619; *Velte v. U. S.* 76 Wis. 278; *Graham v. C., M. & St. P. R. Co.* 53 Wis. 473; *Lusk v. Smith,* 21 Wis. 28; *Weggner v. Greenstine,* 114 Mich. 310; *Boots v. Steinberg,* 100 Mich. 134; *Dempey v. Schawacker,* 140 Mo. 680; *Jewell v. Schroeppel,* 4 Cow. 564; *Ladue v. Seymour,* 24 Wend. 60. There could be no recovery where the architects were not satisfied with the work. *Butler v. Tucker,* 24 Wend. 447; *Barton v. Hermann,* 11 Abb. Pr. (N. S.), 378; *Boots v. Steinberg,* 100 Mich. 134; *Richardson v. Mahon,* L. R. 4 Ir. 486, 11 Cent. L. J. 235; *Silsby Mfg. Co. v. Chico,* 24 Fed. Rep. 893; *Stadhard v. Lee,* 3 Best & S. 364; *Dunaberg & W. R. Co. v. Hopkins, G. & Co.* 36 Law T. N. S. 733; *Gibson v. Cranage,* 39 Mich. 49; *Tetz v. Butterfield,* 54 Wis. 242; *Pormann v. Walsh,* 97 Wis. 356; 29 Am. & Eng. Ency. of Law, 927; *Hudson v. McCartney,* 33 Wis. 331; *Milner v. Field,* 5 Exch. 829. There can be no waiver without a consideration or an estoppel, and using a building on one's own land is no waiver. 28 Am. & Eng. Ency. of Law, 531; *Repley v. Ætna Ins. Co.* 30 N. Y. 136; *Yahr v. Joint School Dist.* 99 Wis. 281; *Smith v. Brady,* 17 N. Y. 173; *Hanley v. Walker,* 79 Mich. 607; *Elliott v. Caldwell,* 43 Minn. 357;

*Munro v. Butt*, 8 El. & Bl. 738; *Anderson v. Todd*, 77 N. W. Rep. 599; *Eaton v. Gladwell*, 108 Mich. 678; *Genni v. Hahn*, 82 Wis. 90.

For the respondent there was a brief by *Frawley, Bundy & Wilcox,* and oral argument by *C. T. Bundy.*

DODGE, J.   1. Certain of the findings are very sweeping in their effect upon the rights of the parties, and from their correctness or incorrectness would result very different rules of law in the decision.   We find no clear preponderance of the evidence against the finding of the court that the defendant E. H. Parker was from beginning to end the agent of the defendant *Anna E. Parker,* his wife, in regard to all matters involved in the construction of this building, and in the making of modifications or carrying out of the contract. Where we so concur with the court below no good purpose can be served by a discussion of the evidence here.   It is sufficient to state such concurrence.   It may, however, be said generally that the conduct of the husband and wife is such as to raise an almost irresistible inference that she had full knowledge that he was assuming to act for her, and, if so, his conduct in so doing, and her silence and nonattendance, are the most cogent evidence as to the actual understanding between them that he should take full charge. Neither do we find any preponderance of evidence against the finding of the court that the provisions of the contract were waived by both parties, requiring written orders of the architects in advance for changes, and requiring the certificates of the architects as a prerequisite of payments on the contract, and with reference to the fixing of the value of changes and omissions by the architects.   Nor can we feel justified in disturbing the findings of the court as to the unfairness, dishonesty, and gross incorrectness of the acts of the architects in certifying to certain pretended computations some six months after the suit was commenced, or in then

declaring their dissatisfaction with the work done.   On the other hand, we think it must be understood that the finding of a declaration of satisfaction made by the defendant E. H. Parker, in company with his architect, after a full examination of the building, in the light of the other evidence, constituted a finding that the defendant and the architect were satisfied, and accepted the building as a substantial compliance with the contract, which finding has sufficient support in the evidence.   We also find abundant support in the evidence for the further general findings that all omissions of material or work required by the contract, which did not occur upon the order of the defendant, occurred inadvertently and unintentionally; that the contractors acted honestly and in good faith, and made no wilful departure from the plans and specifications; that neither architects nor defendants, though having full knowledge, made any complaint about the way the work was being done; that before the commencement of the action the contractors fully and substantially completed their contract in substantial compliance with the terms thereof, and constructed a good and suitable building, which was taken possession of in January, 1894, and has ever since been occupied for the purposes for which it was erected, and that it is reasonably well adapted for such purposes; that the contractors made all changes, and did all work required to complete said building, requested or required of them by either the architects or the defendants; and that the defendants took possession and accepted the building as a completed building.   The omissions not authorized by defendant, which the court found to have occurred, are of the most trifling character, amounting to only about $39, which is allowed on the counterclaim.

The evidence is extremely voluminous, and the method of printing the same by classification under the items of appellant's assignments of error has made difficult the examination thereof upon any other lines, and continual reference to

Laycock vs. Parker.

the manuscript bill of exceptions has been found necessary. This arrangement of the case is not to be approved. We have, however, examined the same with great care, and on most subjects more than once. The case was tried with thoroughness before a competent referee, J. C. Gores, Esq., who evidently gave it the fullest consideration, having before him the various witnesses, whose direct conflict as to facts, and especially as to matters of opinion, runs throughout the case. He had, in addition, the advantage of personal knowledge of the character, intelligence, and fairness of many of them, and it is obvious that he considered some of them entitled to little or no credit. He had the further advantage, of which this court is deprived, of the explanation and immediate application of testimony to the plans, which is, of course, impossible to fully accomplish in the transcript of the testimony. In many instances it is extremely difficult from the record to ascertain the exact item of construction to which witnesses testify. That difficulty did not rest upon the referee, who had the plans to which the witness referred open before him, and could assure himself of the subject about which testimony was being given. The trial before the referee was followed by an argument before the circuit court, extending, we are told, over a period of nine days, where again all of these advantages, of which this court is deprived, except the actual presence of the witnesses, existed in favor of a correct understanding of the details by the circuit judge, who doubtless was further aided by his personal knowledge of, and acquaintance with, some of the principal witnesses. The consideration by the court was not perfunctory or general, for he went into the details, and modified certain of the allowances. A case can hardly be suggested where it would be more perilous for an appellate court, upon printed evidence confused as this, and without the opportunity to judge from observation as to the fairness,

intelligence, or credibility of witnesses, to attempt to correct the conclusions. reached below as to the weight or preponderance of the evidence on specific items or subjects, unless an error in that respect appears with great clearness and certainty.

As a result of those general findings, the conclusion is irresistible that the plaintiff is entitled to recover the contract price of the building, together with the reasonable market value of the additions and extras ordered by the defendant, less the reasonable value of the work and materials omitted, from which should also be deducted the amount found by the court upon defendant's counterclaim for delay in completion, and value of use of defendant's heating plant; which is substantially the general conclusion reached by the court below. *Laycock v. Moon*, 97 Wis. 59; *Bannister v. Patty's Ex'rs*, 35 Wis. 215; *Trowbridge v. Barrett*, 30 Wis. 661; *Smith v. Alker*, 102 N. Y. 87; *Smith v. Guggerty*, 4 Barb. 614; *Sinclair v. Tallmadge*, 35 Barb. 602; *Flaherty v. Miner*, 123 N. Y. 382.

The defense tendered consists: first, in the claim that many of the items allowed to the plaintiff as extras are not properly such, or that they have been allowed at too high a price; second, that many omissions other than those allowed by the court below occurred, and that deduction should be made therefor, also that the amounts allowed for certain of the omissions are less than their reasonable value; and, third, a series of claims for damages of a more general character. The findings classify these respective claims in much detail, defining what of the extras and what of the omissions occurred, and the reasonable value of each item. As to the omissions counterclaimed by defendant, the court further finds which occurred by express authority of defendant, which was incidental to alterations ordered by the defendant, which did not occur, and those which occurred

without authority, but by oversight. As to all of these we find that the findings are not antagonized by any clear preponderance of the evidence.

The writer of this opinion is inclined to the opinion that, as to some twenty-five or more of the items, both of extras allowed to the plaintiff and disallowances of deductions claimed by the defendant, aggregating approximately $300, a preponderance of evidence existed against the findings either as to the propriety of the item itself or as to the amount thereof; but, upon a careful re-examination of the evidence as to these items by other members of the court, their conclusion remains unchanged that there is no such clear preponderance as to justify us in disagreeing with the findings made below, under the rules, so long established, governing review of questions of fact on appeal. Such conclusion by a majority of the members of the court is of course decisive, and it is needless to enlarge upon the individual views of the writer as to a question merely of preponderance of evidence.

As to the following general claims for damages which the court found unproved and untrue, we also deem the findings sustained, viz.: Unsuitable brick and improper laying of same, $3,500; unsuitable material and improper and unskilful laying on of lath and plastering, $4,000; unsuitable and defective timber and framing thereof, $3,000; unskilful and improper construction of stonework in said building, $1,500; omission to clean up said building, $32.18; leaving chimneys choked up, $300; failure to amend settlements and shrinkages, $125; improper and unskilful setting of curbstone and sidewalk beams, $300; general defects specified in second counterclaim, $4,000; also, with reference to the finding of $268.41 as the damage sustained by defendant from delay in completion of the building, $15 as the reasonable value of use of defendant's heating apparatus, and $10 for omission to repair certain broken glass.

We also find sustained by the evidence the findings as to the date of the last charge for labor and materials, and as to the amount of payments, including therein the cost of heating parts of the building while contractors were at work therein.

We shall not attempt any discussion of the evidence on these questions. It would serve only to extend this opinion with no compensating benefit. No general rules of law can thereby be established. The court below may have reached its conclusion on any one of several theories,— truthfulness of one witness or untruthfulness of another, superior familiarity of one or inherent probability from various facts disclosed or conduct established,— and any of such hypotheses be sufficient to justify its conclusion. The parties and counsel who have participated in the arguments to the referee and to the court below can as well judge of the reasons which guided those decisions as if the testimony were again reviewed *in extenso*.

As to some of the larger and more individualized elements or items of damage claimed by the defendant, it may perhaps be admissible to indulge in some further remarks.

The first of these is a claim for damages upon the brick walls of the building for the reason: first, that the plaintiff, instead of using Menomonie pressed brick as specified in the contract, used Eau Claire brick; and, secondly, because in laying the wall he did not fill all the internal spaces between brick with mortar, as it is claimed the specifications required.

As to the first branch of this claim it is fully established that the substitution of Eau Claire brick for Menomonie brick was consented to by the defendant through her husband, as her agent, and the evidence wholly fails to show any difference in market value or in practical quality of the brick, and establishes that neither damage to the defendant nor saving to the plaintiff resulted from this substitution.

Laycock vs. Parker.        •

The second element involves the meaning of certain technical words in the specifications, to wit, "The brick to be laid close, and joints thoroughly flushed with mortar." The contention on the part of the defendant is that these words required that there should be no spaces between bricks which were not entirely filled with mortar. The plaintiff contends that it is satisfied by filling the face of the joints between the exterior brick with mortar and covering each layer of interior brick with mortar before the next was laid on, so that some portion thereof crowds into the vertical interstices. A very large amount of testimony was taken as to the manner of laying brick walls, and as to the meaning of the expression "flushing joints,"— many, if not all, of the witnesses agreeing that the filling of the interstices in the interior of the wall is only accomplished by a process called "slushing," namely, the pouring in of very thin mortar, so as to run into the spaces and fill them,— and the controversy is whether the word "flush" has the same meaning as the word "slush." It is fully conceded by the plaintiff that what he terms "slushing" was not done, and the fact that the manner in which he did lay the brick satisfies the terms of the specifications is affirmed by a large number of witnesses, including several expert bricklayers of Eau Claire and vicinity. The plaintiff offered testimony of identity between the expression "to flush joints" and "to slush joints," which he seeks to confirm by reference to standard books on architecture and building, and to encyclopedias. The question was treated below as one for expert testimony, and, so treated, there is abundance of evidence to support the conclusion reached by the court that the manner of laying the brick satisfied the calls of the specifications; and we cannot feel justified in differing from this conclusion, even as one of fact. Of course, if in local application there is a custom in the vicinity of Eau Claire, where this building was constructed, which gives meaning to these words, such custom might well be con-

trolling. *Shores L. Co. v. Stitt*, 102 Wis. 450. Further, however, the method of laying these walls was open and obvious, under the eye of the defendant's agent, Dr. Parker, at all times, and, whenever he was present, open to the observation of the architect; and *Laycock* claims, and the court found, that no complaint was ever made to him while the work was in progress. This presents a state of facts to which *Laycock v. Moon*, 97 Wis. 59, is especially applicable and controlling.

The next claim in this category is for defective plastering, it being claimed that the specifications required three coats of adamant plaster, the same to be rodded and made perfectly smooth, and to be put on under the direction of men furnished by the manufacturers of adamant plaster, and to be seven eighths of an inch thick, inclusive of the lath. The plaster was put on by two men who had been in the employ of the adamant company, and who were employed at the request of the defendant's agent. There is no doubt that the plaster consisted of only two coats; the surface coat being what is called a putty coat, as distinguished from an adamant coat. The evidence is very conflicting as to the thickness of the plastering, but supports the finding that it substantially and for all practical purposes complies in that respect with the specifications. It also establishes that the use of the so-called putty coat for the exterior surface, in lieu of the adamant coat, was by express direction of the defendant's agent. The specifications are ambiguous as to whether two or three coats are required. The first description indicates but two coats, viz.: "A superior quality of adamant work for the first coat, and the regular putty coat for the second coat, or adamant to have plenty of sand mixed in." Further on, in the description of the method of laying the plastering, protecting woodwork, etc., the expression occurs: "The first coat must be thoroughly dry before the second coat is put on, and the last coat must be

thoroughly dry before the finishing coat is put on." The plaster put on complied with the first description in this article of the specifications, in that there was a first coat of adamant plaster and a second coat known as the putty coat. The rodding required by the specifications consists in the use of a long stick or rod, with a straight edge, for the purpose of smoothing long surfaces of the plaster. It was shown by the testimony of experts in plastering that, in the laying of two-coat adamant, this rodding was not feasible or effective, and the man who put on the plastering testified to the use of another process called " darbying," which he said was more effective and beneficial in handling the class of plaster known as adamant, required by the specifications. The most material element of fact, however, on this subject, consists in the full knowledge and observation by both Dr. Parker and the architect of the method of plastering, the fact to their knowledge that it was being done by subcontract and in the manner described, and that when the subcontractors claimed to have it completed the architect was called on to pass upon it before payment of the subcontractors by the plaintiff, and that he did so, pointing out defects in certain places, which, as he required, were remedied, but otherwise approved of the entire job as satisfactory, upon the faith of which the plaintiff paid the subcontract price for the plastering. These facts make the principle of *Laycock v. Moon*, 97 Wis. 59, strictly applicable. It was the duty of the defendant, through her agents, to object at a time when objection would enable the contractor to modify the method of doing his work and protect himself from serious loss, instead of postponing that objection until it was too late to make it without causing undue and unreasonable expense. The plaintiff was justified in acting on this both tacit and expressed satisfaction. Upon this ground the conclusion of the court below is sustained that nothing should now be recovered as damages for the method of plastering the build-

Laycock vs. Parker.

ing, as well as on the ground that there is no clear prepon-
derance of evidence against the finding of the court that
there was no departure from the requirements of the con-
tract.

Another element of damage claimed is the omission to
replace a broken down-spout from the eaves to the sewer,
and also for certain injuries resulting to a tenant from stop-
page of water therein. It is strenuously insisted, and with
much force, that, although the specifications required that
a down-spout should be put in, still such requirement re-
lated only to the building in, and that the construction of
the spout itself was a part of the plumbing, which was spe-
cially reserved and excepted from the contract. This view
is confirmed by the fact that the defendant E. H. Parker
himself employed the plumber and directed him to construct
this down-spout. But whether the duty rested on the con-
tractor or not to put this in, it was confessedly done, and
the damage results from the presence of extraneous matter
in the pipe after the work had been done, and after the de-
fendant had taken possession of the building, but before
plaintiff left it as completed, which caused accumulation of
water, freezing of which broke the iron pipe. There is ab-
lutely no evidence to connect the plaintiff or his workmen
with introducing the refuse which was found in the pipe
and claimed to be the cause of its stoppage. It would be
only on mere conjecture that such stoppage could be ascribed
to his acts or omissions. There is no ground, therefore, on
which he can be held liable either for the expense of re-
placing such pipe or for the injuries resulting to any tenant
from the leakage therefrom.

Defendant also counterclaims for alleged damages done
to neighboring property. The court refused to allow the
claims, apparently because defendant had not proved any
damage to her; she not having paid anything to the neigh-
bors, and no steps having been taken to compel her to do

Laycock vs. Parker.

so, although bills had been made out and presented to her, some, at least, at her husband's solicitation, after commencement of this action. The evidence also certainly failed to prove with sufficient certainty any liability of defendant to any of these parties. The claims of all were based in part upon removal of the lateral support for the soil under their respective buildings. Of course, the rule is elementary that it is only for soil in its natural condition, not burdened with buildings, that lateral support from a neighbor's soil is a right. Washb. Easements (4th ed.), 580 *et seq.*

So far as the injury is due to negligence or wanton acts of the contractors in doing their work, not necessarily incident to the contract or the plan of the work, the contractors, and not the owner, would be responsible directly to the injured party.

A considerable part of one claim is for the contractors' use and occupation of part of the neighbor's lot for storage of materials, placing mortar beds, etc.,— clearly not recoverable against the defendant, who is not shown to have had any connection therewith. The claim, if it exists at all, is directly against the plaintiff.

Another claim includes, as a material part, interruption of access through alley to her premises. Parker testifies that such interruption resulted necessarily from the excavation and building, and there is no pretense that improper performance of the work by contractors was the cause. Parker also testifies that no damage was done that claimant. This clearly is not sustained either as a liability of the defendant, or, even if so, as one for which plaintiff is responsible.

If any evidence establishes injury to any of these neighbors, for which the defendant would be liable and would have a right to indemnity from contractors, it is so confused with other claims that it cannot be separated and the amount

Laycock vs. Parker.

ascertained. We think the court correctly refused any allowance on this element of the counterclaim.

Another claim, much-argued by defendant, is the omission of the vault doors. It appeared that vault doors might vary in cost from $40 to $500 each, according to quality. Obviously the quality might depend largely on the occupancy of the various rooms, whether by a banker, a lawyer, or real-estate dealer, having very valuable papers for safe-keeping, as against both fire and burglars, or others needing only security against fire. No mention of such doors was made in contract or specifications, nor on the plans; and, without any suggestion of claim that they were part of the contractor's duty, defendant E. H. Parker purchased and put in place two, as rooms were rented, before final completion. Much evidence of experts was offered to the effect that, unless specified, such doors would not be considered within the contract. Although they were disputed by other witnesses, we think the court right in holding that these doors were not contracted to be put in by plaintiff.

2. Appellant asserts error in that interest was allowed plaintiff on the balance found his due from the commencement of the suit.

The question of interest is one much more often passed upon than carefully considered by courts. It is usually presented only incidentally to much more important issues, and often decided one way or the other at the close of exhaustive investigation of the other questions, and with the perhaps unconscious feeling that it is not of sufficient magnitude to justify further serious labor. Again, the elements involved in determining the question are many of them so elastic in their application that cases may be rightly resolved in different ways without the distinction being apparent from the statement of them.

The question is also one of those upon which the old rea-

sons and principles have been departed from in deference
to modern business methods and views of commercial equity,
and upon which the law has progressed in a steady develop-
ment away from the early precedents. Sedgwick, Dam.
§ 297. Anciently interest, called usury, was an abhorrence
to the law, and a contract therefor was not only not enforce-
able, but criminal. *Adriance v. Brooks,* 13 Tex. 279, 281. The
increase of the importance of personal property and com-
merce, and the growing recognition of the fact that the use
of another's money was valuable to the user and a legiti-
mate subject for compensation to the owner, at last forced
the law to accede thereto, and to yield enforceability to ex-
press contracts to pay interest. 2 Lewis' Bl. Comm. 454.
This concession was followed by a recognition of the fact
that a refusal to pay money legally due, like a refusal to
perform any other legal duty to another, merited condem-
nation and punishment from the courts, and the doctrine
of interest as *damages,* in absence of express agreement, be-
came established; but it was allowed as damages and by
way of punishment to a wrongdoer. The idea of compen-
sation to him who had been deprived of the use of his
money may have been present, but was never prominent,
while the thought that the debtor by interest was only
paying for value in fact received by him from the use of
the money of another is hardly suggested, as in recent cases:
*Crescent M. Co. v. Wasatch M. Co.* 151 U. S. 317, 323, as com-
pared with *Curtis v. Innerarity,* 6 How. 146, 154. The al-
lowance of interest as damages was, as might have been
expected in view of the principle on which it was founded,
confined to strictly liquidated demands. Being punishment,
it should not be imposed if there were any uncertainty as
to defendant's duty to excuse nonperformance of it.

As the lending and hiring of money increased more and
more with the development of commerce and credits, there

developed a growing sense of the equitable character of interest, and step by step that equity in individual cases led to relaxations of the strict rule demanding absolute liquidation of a demand to justify interest allowance by courts, American courts taking the lead in developing this idea. *Bromfield v. Little,* Quincy, 108; *Van Rensselaer v. Jewett,* 2 N. Y. 135.

Meanwhile legislatures as well as courts were yielding to the sentiment of the community, and, from the original statutes, guardedly permitting express contracts for limited rates of interest, they progressed to that enacted in New York about 1829, which is practically identical with our own existing statute originally adopted in the revision of 1858, whereby the law itself fixes a rate to be paid in the absence of any agreement therefor, and extends its application not only to money due upon "note or other contract," as in our prior statutes (ch. 45, R. S. 1849), but to loan or *forbearance of any money, goods, or things in action.* Stats. 1898, sec. 1688. Such a change in the statute is certainly significant, and may well justify a difference in states where it is in force as to the class of demands which draw interest without express agreement therefor.

In New York, whence we adopted sec. 1688 in 1858, *Van Rensselaer v. Jewett, supra,* and *Dana v. Fiedler,* 12 N. Y. 40, had been decided before that time, and had fully recognized an intermediate class of demands between strictly liquidated ones, like a promissory note for a specified sum, and those wholly unliquidated, like breach of promise to marry or such torts as slander and libel, and had extended to some of that class of demands which, for convenience, we may term *liquidable,* the interest-earning right, independently of any agreement. Sedgwick, Dam. §§ 299, 300.

In *Van Rensselaer v. Jewett, supra,* which was an action to recover damages for failure to pay as rent each year

Laycock vs. Parker.

eighteen bushels of wheat, four fat hens, and one day's service, with carriage and horses, the court (Bronson, J.) said: "It was decided in 1806, without assigning any reason for the judgment, that interest was not recoverable in a case of this kind. *Van Rensselaer v. Platner*, 1 Johns. 276. But since that time the supreme court has deliberately held, on three several occasions, including the present one, that interest is recoverable in such a case. *Lush v. Druse*, 4 Wend. 313; *Van Rensselaer v. Jones*, 2 Barb. 643. The principle to be extracted from these decisions may be stated as follows: Whenever a debtor is in default for not paying money, delivering property, or rendering services in pursuance of his contract, justice requires that he should indemnify the creditor for the wrong which has been done him; and a just indemnity, though it may sometimes be more can never be less than the specified amount of money, or the value of the property or services at the time they should have been paid or rendered, with interest from the time of the default until the obligation is discharged. And, if the creditor is obliged to resort to the courts for redress, he ought in all such cases to recover interest, in addition to the debt, by way of damages. It is true that, on an agreement like the one under consideration, the amount of the debt can only be ascertained by an inquiry concerning the value of the property and services. But the value can be ascertained, and, when that has been done, the creditor, as a question of principle, is just as plainly entitled to interest after the default as he would be if the like sum had been payable in money. The English courts do not allow interest in such cases, and I feel some difficulty in saying that it can be allowed here, without the aid of an act of the legislature to authorize it. But the courts in this and other states have for many years been tending to the conclusion, which we have finally reached, that a man who breaks his contract to pay a debt, whether the payment was to be made in money or in anything else,

shall indemnify the creditor, so far as that can be done, by adding interest to the amount of damage which was sustained on the day of the breach. The rule is just in itself; and, as it is now nearly nineteen years since the point was decided in favor of the creditor, and eight out of nine judges of the supreme court have at different times concurred in that opinion, we think the question should be regarded as settled." The principle of this case has been reaffirmed in New York many times. *McMahon v. N. Y. & E. R. Co.* 20 N. Y. 463; *McCollum v. Seward,* 62 N. Y. 316; and *Mercer v. Vose,* 67 N. Y. 56, were actions on *quantum meruit* to recover for services; *held,* interest recoverable. Other cases in New York are *Newell v. Wheeler,* 36 N. Y. 244; *Adams v. Fort Plain Bank,* 36 N. Y. 255; *Mygatt v. Wilcox,* 45 N. Y. 306; *Smith v. Velie,* 60 N. Y. 106; *De Lavalette v. Wendt,* 75 N. Y. 579; *Wilson v. Troy,* 135 N. Y. 104; *Mansfield v. N. Y. C. & H. R. R. Co.* 114 N. Y. 331; *Gray v. Central R. Co.* 157 N. Y. 483,— and the rule in that state may be stated to be that interest is allowable upon a demand, the amount of which could be ascertained by computation, together with a reference to reasonably well-established market values, because such values in many cases are so nearly certain that it would be possible for the debtor to obtain some approximate knowledge of how much he was to pay; or, to quote from *Mansfield v. N. Y. C. & H. R. R. Co., supra,* it is extended to actions to recover damages for breach of contract, "if the means are accessible to the party sought to be charged of ascertaining the amount, by computation *or otherwise,* to which the other party is entitled."

This general rule has received approval from many other courts as well. *Spalding v. Mason,* 161 U. S. 375, 396; *Kuhn v. McKay* (Wyo.), 51 Pac. Rep. 205.

As would be expected, courts have varied greatly in applying these rules to individual cases; but it may be safely said that the tendency has been in favor of allowing interest

rather than against it, and that the degree of certainty or ease with which the approximate amount can be ascertained has grown less and less stringent.

In Wisconsin, without perhaps so carefully laying down general rules, the court has in a large measure followed the lines of the New York decisions. Thus in *Vaughan v. Howe*, 20 Wis. 497, the amount of the recovery depended on the value of a disputed quantity of unmerchantable logs, the value of which was disputed, and the court without discussion held interest recoverable from the contract time of payment.

*Marsh v. Fraser*, 37 Wis. 152, is perhaps the most quoted case in Wisconsin, and, like the utterances of the Delphic oracle, has been made the basis for antagonistic conclusions. That was a suit on *quantum meruit* for labor and services in moving a building, with no time of payment fixed, and no evidence of demand. The court held the allowance of interest from the time of the performance of the services error, upon the ground however that no time of payment was fixed, and no demand had been made, saying: " At common law, where no time of payment was fixed, a demand and refusal of payment was generally necessary to the recovery of interest. It was not allowed on unliquidated demands. This rule has been modified in some particulars. But the better rule sanctioned by modern authorities is that, in the absence of agreement for interest, an open, unliquidated demand for goods or services does not carry interest." *Van Rensselaer v. Jewett*, 2 N. Y. 135, is quoted, and its rule neither adopted nor repudiated, as unnecessary to a decision.

In *Yates v. Shepardson*, 39 Wis. 173, which was a suit for professional services, disputed as to rendition, character, and value, it was held that interest ran from the commencement of the suit. There was no evidence of any earlier demand. The court said, by Lyon, J., who participated in decision of *Marsh v. Fraser*: " By the well-settled rules of law on the

Laycock vs. Parker.

subject of interest, which are stated by the chief justice in *Marsh v. Fraser*, 37 Wis. 149, no interest can be allowed on the account before the action was commenced."

In *Tucker v. Grover*, 60 Wis. 245,— a claim for *quantum meruit* in investigating pine lands, which the court described as "an uncertain one, resting in *quantum meruit*, being always denied and contested by the defendant, no account thereof rendered nor any demand made for any certain sum, and, of course, not susceptible of computation merely to render it certain, it was clearly unliquidated," — interest was held recoverable from the commencement of the suit.

*Gammon v. Abrams*, 53 Wis. 323, was a suit for the reasonable value of a reaper, both the liability and the value being controverted. The court said that interest was properly allowable from the commencement of the suit, and it makes no difference that such value had to be ascertained by evidence.

In *Gallun v. Seymour*, 76 Wis. 251, which was for damages for breach of contract to deliver tan bark, the measure claimed being the difference between contract price and market value, the latter being in strenuous controversy, the court said: "We think there is no force to the objection to the allowance of interest from the commencement of the action on the amount of damages."

*Farr v. Semple*, 81 Wis. 230, was an action for the reasonable value of the services of a nurse. The court held interest should be allowed from the rendition of account and demand of payment.

*Ryan Drug Co. v. Hvambsahl*, 92 Wis. 62, was an open account, and the court held interest recoverable only from commencement of suit, there having been no previous demand.

On the other hand, in *Shipman v. State*, 44 Wis. 458, which was a claim for reasonable value of services as an architect, the court held interest not recoverable, saying: "As between

individuals, the better rule is that when the right of a party
to recover compensation is doubtful, and is contested on
reasonable grounds, and the amount due him requires to be
adjusted by proceedings in the suit, interest is only recover-
able after the right of a party to recover and the amount of
the recovery has been determined."

*Martin v. State*, 51 Wis. 407, was a suit for general dam-
ages for preventing plaintiff's completion of a contract for
the improvement of Fox river, including loss of prospective
profits, and the court held interest not recoverable until the
amount had been liquidated by an award.

In *State ex rel Sloan, S. & M. v. Warner*, 55 Wis. 271,
which was for reasonable value of professional services, the
court held interest not recoverable, saying that the amount
would have depended on "proofs showing what they were
reasonably worth, and upon the evidence it would be a ques-
tion of fact for the jury. We are unable to distinguish this
case from *Marsh v. Fraser*, [37 Wis. 152,] where it was held
that plaintiff could not recover interest."

There is thus a clear conflict in the Wisconsin cases in the
application of whatever general rules govern the question,
and those general rules have not been set forth, except in a
very limited way in *Marsh v. Fraser*, where the question
was rather as to whether interest could run before demand
than whether it might have run upon the claim there pre-
sented, if a proper demand had been made. Dismissing from
consideration *Martin v. State*, where the claim was clearly
unliquidable, being for general damages such as loss of prof-
its, etc., it is obvious that the reasons assigned for refusal of
interest in *Shipman v. State* and *State ex rel. Sloan, S. & M.
v. Warner* would have equally denied such allowance in *Farr
v. Semple, Gammon v. Abrams, Tucker v. Grover,* and *Yates
v. Shepardson,* unless there were elements of uncertainty or
distinction not set forth in the two state cases, such, for ex-
ample, as that there was no market value ascertainable for

Laycock vs. Parker.

the services there involved, or because no officer of the state had any lawful power to authoritatively ascertain and settle the amount due. We think, notwithstanding these two individual cases, that the great weight of authority is in favor of a rule substantially such as that adopted in New York, as above stated. The true principle, which is based on the sense of justice in the business community and on our statute, is that he who retains money which he ought to pay to another should be charged interest upon it. The difficulty is that it cannot well be said one ought to pay money, unless he can ascertain how much he ought to pay with reasonable exactness. Mere difference of opinion as to amount is, however, no more a reason to excuse him from interest than difference of opinion whether he legally ought to pay at all, which has never been held an excuse. When one is held liable, say on a promissory note to which his defense has raised a doubtful question of law, he must pay the interest with it, because, theoretically at least, there was a fixed standard of legal obligation, which, if correctly applied, would have made his duty clear. So, if there be a reasonably certain standard of measurement by the correct application of which one can ascertain the amount he owes, he should equally be held responsible for making such application correctly and liable for interest if he does not. The New York courts have adopted as designation of such a standard "market value," and in a broad use of the term this is perhaps the safest test to apply. It must not, however, be restrained to definite quotations on a board of trade, or to such degree of certainty that no difference of opinion could exist. If one having a commodity to purchase or certain services to hire can by inquiry among those familiar with the subject learn approximately the current prices which he would have to pay therefor, a market value can well be said to exist, so that no serious inequity will result from the application of the foregoing rule to those who desire to act

Laycock vs. Parker.

justly; especially in view of the other rule of law that a debtor can always stop interest by making and keeping good an unconditional tender, thus giving him a substantial advantage over a creditor, who has no such option.

Applying the rule thus defined to the facts in this case, there is no escape from the conclusion reached by the court below. The bulk of the recovery is for the contract price of $18,000, less the payments made, which the court found to be $439.62 greater than plaintiff admitted in his complaint; such excess apparently being made up of items which belong rather to the class of counterclaims than payments. The balance of the judgment is made up of plaintiff's extras, less the defendant's counterclaims, viz. $1,004.43. Of this every item was material or labor, which was proved to have a reasonably certain market value at Eau Claire, so that from the statements of witnesses familiar therewith the court was able to fix such value, and the defendant could have done so had he made an honest effort. They involved none of those elements which have been held to make the claim not only wholly unliquidated, but unliquidable,— no claim for general damages, nor for loss of profits, as in some of the cases; nor even for professional services, which in some cases (*Swinnerton v. Argonaut L. & D. Co.* 112 Cal. 375) have been held to be without a sufficiently certain market value, though in other cases the contrary has been held (*Adams v. Fort Plain Bank*, 36 N. Y. 255; *Mercer v. Vose*, 67 N. Y. 56; *Yates v. Shepardson*, 39 Wis. 173).

The plaintiff's claims then being such as may draw interest, the next question is, From what date? And about this question some confusion has been thrown by the hasty disposal of interest claims and inconsiderate remarks of courts. The rule of course is that the debtor should pay interest from the time when he ought to have paid the debt. That time may be fixed by agreement, and that agreement may be implied from known customs or other things. It may

Laycock vs. Parker.

also be fixed by law, as in *State v. Guenther,* 87 Wis. 673; or *Travelers' Ins. Co. v. Fricke,* 99 Wis. 367, in which event the interest runs from the date so fixed. If not fixed, interest will not commence to run until the creditor makes it the duty of the debtor·to pay by an adequate demand that he do so, which demand should be sufficiently specific to inform the debtor of·the claim made, so that he can ascertain therefrom the amount he ought to pay, by application of the standard above set forth. When so notified of what his creditor's claim is, and that he is then required to pay it, he is thenceforward wrongfully withholding money from that creditor. Sedgwick, Dam. §§ 302, 315; Perley, Interest, 29; *Marsh v. Fraser,* 37 Wis. 152; *Farr v. Semple,* 81 Wis. 230; *Ryan Drug Co. v. Hvambsahl,* 92 Wis. 62; *Niblack v. Park Nat. Bank,* 169 Ill. 517; *White v. Miller,* 78 N. Y. 393, 398; *Robbins v. Carll,* 93 N. Y. 656.

Another date has crept into the decisions of Wisconsin and many other states as that at which interest on unliquidated (but liquidable) claims and open accounts should commence, to wit, the commencement of the suit. An examination of all of these decisions, with a few unimportant exceptions, will make apparent, however, that the commencement of suit is only significant because in and of itself it constitutes a demand. On principle, it can have no other force. If a proper and lawful demand for payment cannot put the debtor in default, obviously the commencement of a suit cannot. The one as fully informs defendant of the rights claimed by plaintiff as the other. It would force litigation if a different rule were adopted. If regard for the convenience of the debtor or desire to negotiate would lead the creditor to grant delay, public policy would dictate that he have such opportunity without loss of interest, rather than that litigation be forced upon him to save that right. See Wisconsin decisions hereinbefore mentioned; also, *Hawley v. Tesch,* 88 Wis. 213, 242; Sedgwick, Dam. § 315; *Mer-*

*cer v. Vose*, 67 N. Y. 56; *Dempsey v. Schawacker*, 140 Mo. 680; *Quin v. Bay State D. Co.* 171 Mass. 283.

We hold, therefore, that the claim of the plaintiff in this case was capable of ascertainment by defendant, after its presentation, by reference to reasonably certain market values of the various items, that it was duly and adequately presented and its payment demanded before the suit was commenced, and that plaintiff was entitled to interest from the time of such demand, and no error prejudicial to defendant was committed in the allowance made by the judgment.

3. Another error assigned specifically is to the form of the judgment, in that it is a personal judgment against the defendant *Anna E. Parker*. In this respect it comes squarely within the criticism of the judgment in *Welp v. Gunther*, 48 Wis. 543, and all that is there said with reference to that defect in the judgment is here applicable. The judgment is one capable of being docketed as a personal judgment, so as to become a lien upon any real estate which the defendant may have. It was pointed out in argument that she is the owner of real estate in Chicago, and this judgment in its present form could be made the basis of an action at law thereon in that state. Indeed, it is difficult to see how the clerk of the court could resist a demand for the issue of an execution thereon. All of these are burdens to which the law does not authorize the subjection of a defendant in a suit to foreclose a mechanic's lien. The proceeding is wholly statutory, and the rule is applicable, stated in *Welp v. Gunther*, that the judgment must conform to the statute regulating the practice in such actions.

The distinction which was held to be material and to save the judgments in the cases of *Boynton v. Sisson*, 56 Wis. 401, and *Crocker v. Currier*, 65 Wis. 662, is not here present. That distinction consisted in the fact that the judgment,— in the *Boynton Case* foreclosing a mortgage, and in the *Crocker Case* foreclosing a lien,— after providing for the

sale, proceeded to direct that the court upon the coming in of the sheriff's report of sale showing a deficiency should then enter personal judgment. The presence of these words was held sufficient to justify a construction of the whole judgment, so as to deem the first clause merely a compliance with the statute, as a fixing of the amount due, rather than as a personal judgment. As between these cases the present judgment is clearly ruled by *Welp v. Gunther*, and is erroneous.

Neither do we think we can decline to consider this assignment of error on the ground suggested, somewhat unnecessarily, in *Boynton v. Sisson*, namely, that the appeal was from the whole judgment, while the only material error assigned thereon was the personal form of the judgment. In the present case the whole judgment is vigorously attacked, and we can see no course which the appellant could have taken to raise his objections thereto, except to appeal from the whole.

It is not necessary, however, that the entire judgment should be reversed in order to correct this error. The action having been fully tried, the facts being all before the court, it is entirely within the realm of proper practice to reach the result by a modification, which can be accomplished by simply changing the phraseology, by striking out the words, "The plaintiff, *Henry Laycock*, do have and recover judgment of the defendant *Anna E. Parker*," and substituting therefor, "The amount due the plaintiff from the defendant *Anna E. Parker* is the sum of."

*By the Court.*— The judgment is modified as expressed in the last paragraph, and, as so modified, is affirmed, with costs to respondent.