GEORGE M. NEWHALL ENGINEERING COMPANY, LIMITED, Respondent, vs. DALY, Appellant.

*December 17, 1902—January 13, 1903.*

*Building contracts: Rescission by owner: Rights of contractor: Measure of damages.*

1. Where the contractor for the erection of a building is not himself in default, and, after he has gone to substantial expenses in its partial completion, the owner wrongfully prevents him from

completing the contract, the contractor may elect, either to insist on the continued existence of the contract, that he be permitted to perform, and recover damages for its breach, or he may treat the owner's act as a declaration of rescission, assented to by him. In the latter case, where the contract itself provides for no apportionment of compensation, he may recover *quantum meruit* the reasonable value of the work done by him prior to such rescission.

2. Plaintiff contracted to erect a bottling and refrigerating works for defendant. In an action thereon the evidence (stated in the opinion) is *held* to establish that, after plaintiff had gone to substantial expense in partial completion thereof, defendant wrongfully prevented plaintiff from further progress with the work, and that therefore it was not error to award plaintiff judgment for the reasonable value of the work done.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

About the 1st of July, 1900, the Pabst Brewing Company, of Milwaukee, was in treaty to erect on certain real estate belonging to it in Havana, Cuba, certain bottling and refrigerating works, and to sell the same at an agreed price, after erection, to one Reminez. They had substantially closed a bargain with the defendant to erect said buildings and put in the necessary machinery at a price of something over $50,000, whereupon the defendant entered into a written contract with the plaintiff to erect the buildings according to plans and specifications at an agreed lump price of $23,000. No time of completion was specified in that contract, but it was known to the plaintiff that *Daly* was bound to have the buildings completed and the machinery installed, ready for delivery to the Pabst Brewing Company, by December 1st of that year, and that the Pabst Brewing Company was bound to deliver to Reminez by December 15th. Plaintiff immediately proceeded with the work, and continued same with diligence up to November 8th, when it ceased active work thereon by discharging all except a few of the men, although it had on the ground a considerable amount of material, and retained there

its foreman and a few men, who were engaged in sorting
and arranging that material. The evidence of the progress
made at that time is very conflicting, varying from the con-
tention that the work was but one-third done to the contention
that it was four-fifths completed. The court finds that it was
somewhat more than half of the entire work. On November
21st the defendant went through a procedure before a notary,
called a "protest," in which he asserted imperfection in the
work done, and thereupon took possession of the work, ex-
cluded the plaintiff, and completed it. The plaintiff claims
that it did not abandon the work, but suspended for want of
municipal permits, at the command both of the defendant and
of the owner of the property; the defendant having agreed
to obtain such permits. The defendant, however, claims that
the conduct of the plaintiff constituted a wilful abandonment
of the work. Plaintiff brought this action to recover the rea-
sonable value of the work done, which the trial court found to
be $17,500, of which $2,500 had been paid. The defendant
denied any liability by reason of plaintiff's abandonment of
the work, and counterclaimed for that the work done was de-
fective, both in material and workmanship, whereby it became
necessary for him to spend a large sum in remedying such
defects, and also claiming that he necessarily expended, in
completing said buildings, about the sum of $35,500, or
$15,000 in excess of the amount remaining due the plaintiff
on its contract. The trial court found that plaintiff did not
abandon the work, but suspended the same by reason of the
failure of the defendant to procure necessary permits, and by
reason of prohibition against proceeding without such per-
mits, and that it was at all times ready to complete said work
when that omission on the part of the defendant was rem-
edied; that the defendant fraudulently, and for the purpose
of preventing plaintiff from going on with the work, with-
held said permits, and falsely made claim of defects in the

workmanship and material of the work already done, and took possession of the premises, and excluded the plaintiff from completing its work; that the reasonable value of plaintiff's work, above payments, was $15,000; that it was performed according to contract, and was not defective; and that no sufficient evidence had been given of the cost of completing the buildings; and accordingly rendered judgment allowing defendant nothing upon his counterclaims and awarding plaintiff $15,000. From this judgment, defendant appeals.

For the appellant there were briefs by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *C. F. Fawsett* and *F. C. Winkler.*

*Jackson B. Kemper,* of counsel, for the respondent.

DODGE, J. In the presentation of this case, counsel have discussed the rules of law governing the rights of parties upon the partial completion of an entire contract in each of three different phases: First, when the breach is committed by the plaintiff wilfully, without fault of the defendant, and without any excuse; secondly, when the failure to complete the contract is due to the wrongful act of the defendant, preventing the plaintiff, without default on his part, from completion; and, thirdly, an intermediate phase, where neither party is strictly at fault, but through oversight, or by force of circumstances beyond the control of either, the work is not fully completed, but a portion of it performed at expense to the plaintiff, resulting in substantial benefit to the defendant. Of course, when it is ascertained which of these phases is presented in the individual case, discussion of the rules of law governing the others is unnecessary. It becomes necessary, therefore, to first consider the facts of this case, to which must be applied the law in deciding upon the rights of the parties.

A referee, with whom has concurred the trial court, has attempted, in an exhaustive finding, to settle those facts to

substantially the following effect: The plaintiff, from early
in July up to the 8th of November, diligently, and in sub-
stantial accord with its contract, performed the work to an
extent exceeding one-half its total. Thereupon it suspended
work by reason of insistence to it by the defendant that official
permits were necessary to its further prosecution, and by the
owner of the ground, to whom obviously the plaintiff was
authorized by the defendant to defer, that the work must stop
until those permits were obtained; defendant having agreed,
for a consideration paid by the plaintiff, to obtain such per-
mits. Plaintiff did not, either in fact or in law, thereby
abandon the work, but its cessation was not only proper, but
was substantially rendered necessary by the act of the defend-
ant. While the work was so suspended, the defendant, with-
out right, took possession of the work, and thereafter excluded
the plaintiff therefrom. This summary is not entirely in the
language of the findings, and perhaps includes one or two
elements not expressly declared, but, in light of the contro-
versies between witnesses and of the evidence generally, they
are capable of no other construction. After a careful ex-
amination of all the testimony, we are unable to say that these
findings are so without support from credible evidence, or so
antagonized by any clear or overwhelming preponderance, as
to convince us that the court, through mistake, prejudice, or
other cause, did not give such evidence proper considera-
tion. *Hill v. Am. Surety Co.* 112 Wis. 627, 631, 88 N. W.
642. It must be conceded that several of the facts thus found
are controverted by positive and direct testimony of witnesses,
which, if believed, might constitute a preponderance to the
contrary, possibly clear and overwhelming; but the extent to
which such witnesses were impeached, either by fully estab-
lished facts, their own inconsistencies, or, where present upon
the trial, by their appearance and manner, was a subject
especially within the capacity of the referee to decide.
Throughout the case witnesses placed themselves in such com-

plete contradiction to each other that the inference of wilful falsification by one or the other was at least justifiable, and the referee could hardly have reached a conclusion either way without first deciding in his own mind against the credibility of certain witnesses. If, as seems probable, his conclusion was against the honesty and integrity of the defendant and certain of his witnesses, that fact became a cogent one in reaching the further conclusion as to the bad faith of the defendant in the performance of certain conceded acts; as, for example, giving a written demand to the plaintiff's agent, shortly before the defendant took possession of the work, requesting plaintiff to continue and complete it. This was accompanied by what was substantially a notification that defendant would repudiate the work already done, unless modified and changed to an extent which he testified would cost nearly as much as the work itself. Obviously, if such defects existed, there would be no inducement to the plaintiff to attempt to go on with its work, and the court has concluded that this demand to continue was not in good faith, but was fraudulently accompanied and burdened by a false declaration, calculated and intended to deter the plaintiff from acceding thereto. Other illustrations might be given and evidence pointed out to show the incorrectness of appellant's assertion that certain of the material findings are without support, or that certain conflicting facts resting on discredited evidence are undisputed; but, as often stated, no extended discussion of the evidence is warranted, where, after its examination, this court concludes that the material findings are supported. *Laycock v. Parker,* 103 Wis. 161, 172, 79 N. W. 327. These findings, construed in the light of the evidentiary issues and the opinion of the referee, bring the situation clearly within the second of the above-enumerated phases, where the plaintiff, without substantial default on its part, is wrongfully prevented by the defendant from completing the contract. The failure to perform the work up to that time in substantial accord with

the contract is negatived, except so far as variations were assented to and waived by defendant, or so far as those alleged consisted merely in incompleteness; and there is evidence to that effect. Failure of expedition is negatived by the finding that no time of performance was fixed by the contract, and that plaintiff proceeded with diligence. Suspension of the work on November 8th is found to have been justified by absence of permits and by prohibition against proceeding without them, and not to have been an abandonment. These are the only suggested delinquencies on plaintiff's part up to the time defendant took possession of the premises and work to the exclusion of plaintiff. Defendant urges that there is no finding that the permits were necessary in law to enable plaintiff to proceed with its work, but there is finding and abundant evidence that they were necessary in fact, since the owner of the property prohibited continuance without them. We think the evidence shows that the defendant did also, if that fact were necessary to support the judgment. Thus the plaintiff, being no wise in default, and not having abandoned the work, on November 21st the defendant took possession, and thereafter excluded plaintiff, thus rendering impossible his completion of the contract.

To the situation thus summarized the rules of law applicable are not doubtful; indeed, are not seriously controverted by appellant's counsel. If appellant wrongfully prevented plaintiff, not in default, from completing its contract, after it had gone to substantial expense in its partial performance, he placed plaintiff in a predicament, and conferred upon it, as a result, the right of choice between two methods of escape. Plaintiff might have insisted upon the continued existence of the contract, and upon being permitted to perform it, and have recovered its damages for breach thereof; or, recognizing the impossibility of carrying out the contract by reason of defendant's wrongful act, it was at liberty to treat such act as a declaration on defendant's part of rescission, and to meet the

same with an assent thereto on its .part, in which case, certainly where the contract itself provided for no apportionment of compensation, it might recover *quantum meruit* the reasonable value of the work done by it prior to such rescission. Such rule is but the imposition of the ordinary condition that he who rescinds a contract—which the defendant does by rendering its performance impossible—must reestablish the other party in his *status quo*. *U. S. v. Behan,* 110 U. S. 338; *Adams v. Burbank,* 103 Cal. 646, 37 Pac. 640; *Hemminger v. Western Assurance .Co.* 95 Mich. 355, 54 N. W. 949; *Davis v. Hubbard,* 41 Wis. 408. Respondent has adopted the latter course, and the trial court, correctly following the rule of law last stated, has found the reasonable value of the work done by plaintiff, and awarded judgment therefor, in which there is no error.

*By the Court.*—Judgment affirmed.