J. I. Case Plow Works vs. Niles & Scott Co.

---

J. I. CASE PLOW WORKS, Respondent, vs. NILES & SCOTT COMPANY, Appellant.

*April 12 — April 27, 1900.*

*Sale of chattels: Warranty: Breach: Retention of property by purchaser: Absolute worthlessness: Evidence: Measure of damages: Interest.*

1. In case of breach of warranty in the sale of chattels, if a comparatively small outlay will remedy the defect, the vendee is not entitled to keep the chattels and refuse to make the necessary change and recover back the entire purchase price, but he should make the change or cause it to be made, and the reasonable expense of making it will be the ordinary measure of his damages.

2. In an action to recover damages for breach of warranties in the sale of cultivator wheels, evidence that the wheels could have been made entirely serviceable and suitable for the uses intended, at a maximum cost much less than the purchase price, by knocking out the old hubs and casting or welding in new hubs, is *held* to have been uncontroverted, notwithstanding one witness testified generally that the wheels were worthless as cultivator wheels; and another testified that, at the time of the trial more than eight years after the manufacture of the wheels, when they had greatly depreciated by rust, he considered them worthless; and the court found that they were "practically useless and of no market va'ue."

3. In actions for damages for breach of warranty, for breach of contract for the delivery of chattels, for the wrongful conversion of chattels, for the wrongful destruction of property, etc., the plaintiff, if he recovers, is entitled to interest from the time of the breach or the commission of the injury, not *as such*, but *as compensation* for the delay, and in order that he may be fully remunerated for his injury.

APPEAL from a judgment of the circuit court for Racine county: FRANK M. FISH, Circuit Judge. *Reversed.*

The plaintiff is a Wisconsin corporation, doing business at Racine, Wisconsin, and engaged in the manufacture of plows, cultivators, and other agricultural implements. The defendant is an Indiana corporation, which makes metal wheels at La Porte, Indiana.

This is an action to recover damages for an alleged breach of warranties upon the sale of certain metal wheels to be used upon cultivators and other agricultural implements, and which were purchased by the plaintiff of the defendant under a written order made August 16, 1888, and accepted by the defendant. The material parts of the order are as follows:

"You may enter our order for our season's wants on the following styles of wheels, and at the prices and terms named:

32-in. walking cultivator wheel, 1¼ rim, half oval, 8 steel or
    10 iron spokes, ⅝... .............. .. ........ .. .... $  60  each.
31-in. walking cultivator wheel, 1¼ rim, half oval, 8 steel or
    10 iron spokes, ⅝......... .... ..................      59  each.
32-in. sulkey wheel, 2¼ rim, half oval, 14 steel spokes, ⅝.....    1  00  each.
24-in. wheel, 2-in. double-channel-rim, 8 steel spokes, ⅝.....      70  each.

". . . You to guarantee the wheels against breakage in shipping, and against defects in material and workmanship. . . ."

The wheels were to be made after a peculiar style and pattern, samples of which had been previously submitted to the plaintiff, according to a patent owned by the defendant, and their peculiarity consisted in the fastening of the spokes to the hub; the spokes passing loosely through an outer hub, and resting with their ends against an inner hub or removable box, wherein the axle revolved, and where they were held in position by a nut having upon its inner surface a circular, V-shaped flange, which was screwed up on the end of the box so as to engage the flange into similar shaped notches cut into the spokes. Under the option in the order,

the plaintiff chose to have its cultivator wheels made with ten iron spokes. Under the terms of the general order above referred to, the plaintiff thereafter, and during the ensuing year, or ;ered from time to time cultivator and p'ow wheels of the defendant, and the defendant filled said orders; the wheels so ordered and shipped to the plaintiff amounting to 13,894 wheels, the contract price of which amounted to $9,718.87, all of which the plaintiff paid, except the sum of $1,793.07, which fell due August 22, 1889, and $914.28, which fell due April 15, 1890. The plaintiff claimed that all of the wheels so shipped were defective and worthless.

This action was once tried, and resulted in a judgment for the plaintiff, from which judgment both parties appealed to this court, and the judgment was reversed upon both appeals. 90 Wis. 590. Upon that appeal it was held that, under the circumstances, there was no implied warranty of suitableness of the wheels for the purpose intended; that no oral warranty made prior to the written warranty could be shown; and that any defect in the plan of the wheels was not a defect in workmanship; and, in su'stance, that the only warranty on which there could be recovery was an express warranty against defects in material and workmanship,— and the case was remanded for another trial. The action has now been tried again, upon the alleged breaches of warranty as to material and workmanship, and considerable new testimony was introduced upon both sides of these questions. At the close of this trial the plaintiff abandoned its claim of defective material, and rested on the claim of defective workmanship. Upon this question its testimony tended to show that the spokes were not properly notched and were not of uniform length, and that the flange upon the nut did not go down evenly upon all sides into the notches, by reason of which the wheels collapsed when in use. The action was tried before a referee, who found that 6,842 wheels were defective in the respects claimed by

the plaintiff, and that they were practically useless and of no market value, and that the contract price of said defective wheels was $4,282.40; that the plaintiff had actually paid out for freight charges to replace defective wheels, and for wheels shipped out to replace such defective wheels, the total sum of $334.68, for which the plaintiff was entitled to judgment, less the sum of $2,707.35, being the balance unpaid upon the contract price, with interest from the commencement of the action,— making the plaintiff's total recovery $2,685.90. This report was confirmed by the circuit court in all respects, except that it was modified in respect to the amount of damages, and judgment was ordered for the plaintiff for the sum of $4,543.08, less the sum of $2,707.35, balance unpaid on the contract price, together with interest on such balance from the time when it was due to the date of the commencement of the action, amounting in all to $2,852.14; leaving net balance due the plaintiff of $1,690.94, upon which sum the plaintiff was awarded interest from the date of the commencement of the action, at the legal rate, to the date of the judgment. Judgment was entered in accordance with this conclusion March 22, 1899, in favor of the plaintiff against the defendant, for the sum of $2,604.16 damages, together with costs, and from this judgment the defendant appeals.

For the appellant there was a brief by *Cooper, Simmons, Nelson & Walker*, and oral argument by *John B. Simmons*. They contended, *inter alia*, that even if the wheels as delivered were unfit for any use as wheels, if they could be made good at an expense considerably less than the contract price, the plaintiff's damages would be limited by the expenditure required for that purpose. *D. M. Osborne & Co. v. Carpenter*, 37 Minn. 331; *New York State M. M. P. Co. v. Remington*, 109 N. Y. 143; *H. Birdsall, Sons & Co. v. Carter*, 11 Neb. 143; *Miller v. Mariner's Church*, 20 Am. Dec. 345; *Bradley v. Denton*, 3 Wis. 566. The plaintiff's claim was for unliqui-

dated damages, and interest should have been allowed only from the time they were ascertained by the report of the referee. *Laycock v. Parker*, 103 Wis. 161; *Tyson v. Milwaukee*, 50 Wis. 90; *State ex rel. Sloan, Stevens & Morris v. Warner*, 55 Wis. 271; *Martin v. State*, 51 Wis. 407, 412; *Sloan v. Baird*, 12 App. Div. 481; *White v. Miller*, 71 N. Y. 118, 27 Am. Rep. 13; *McMaster v. State*, 108 N. Y. 557; *Mansfield v. N. Y. C. & H. R. R. Co.* 114 N. Y. 331; *Hooper v. Patterson*, 32 Pac. Rep. 514; *Cox v. McLaughlin*, 18 Pac. Rep. 111; *Pacific P. T. Co. v. Fleisher*, 56 Fed. Rep. 899; *Louisville G. Co. v. Hargis*, 33 S. W. Rep. 946.

For the respondent there was a brief by *Quarles, Spence & Quarles*, and oral argument by *T. W. Spence*.

WINSLOW, J. As indicated in the foregoing statement of facts, the alleged breaches of warranty, which upon the first trial of the action were several in number, were reduced upon the second trial to a single alleged breach, namely, defective workmanship; and this breach was principally confined to the claim that the spokes of the wheel were improperly and unevenly notched and were not uniform in length, and to the further claims of lack of uniformity in the perimeter of the flanges of the box and nut, and eccentricity in the screw threads upon the box. Owing to the peculiar construction of the wheel, it was apparently absolutely essential to its success that the notches near the inner end of the spokes which were to engage flanges in the box and nut should be uniform in size and in distance from the perimeter of the wheel, and that the flanges should fit evenly upon all sides into the notches. If such uniformity and evenness did not exist, and the wheels collapsed on that account, it is clear that they were defective in workmanship, because it is admitted that the plan of the wheel necessarily called for such uniformity in order to insure success. In order to substantiate its claim of defective workmanship

in this regard, the plaintiff caused nearly or quite all the wheels which the referee found to be defective to be taken apart and examined by two experts, who testified to the defective notching of the spokes, and the other defects named, and explained why such defects made the wheels unserviceable. These wheels so examined were all stored upon the plaintiff's premises, in Racine, where the case was tried; and at the commencement of the trial the plaintiff offered to allow the defendant to examine all of them, but the offer does not seem to have been accepted. We are now asked to reverse the finding of the referee and court upon these contentions, and to find that the real and only substantial difficulty with the wheels was that the spokes were made of iron instead of steel, and hence that the defendant was not responsible for the difficulty, because the plaintiff deliberately chose the iron spokes. It must be sufficient, upon this branch of the case, to say that, after examination of the evidence, we are clearly of the opinion that the evidence was entirely sufficient to support the findings of the referee and the court, and hence, upon familiar principles, they cannot be disturbed.

The next contention made by the appellant is that the alleged defective wheels were not shown or found by the court to be worthless, but that it appeared by the evidence that they possessed some value, and that hence the recovery by the plaintiff of the full value of the wheels is erroneous. The finding was that, by reason of defects in workmanship, the wheels were "practically useless and of no market value." This was based upon the testimony of two witnesses, one of whom (Mr. Wallis, the general manager of the plaintiff) testified that if the wheels, when delivered, had any value, it was, in his opinion, only that of scrap iron, and that it was doubtful on that score, because the wheels were composed partly of steel and partly of iron, and these parts would have to be separated, and that as wheels they had no value;

that he meant that the wheels were not suitable for the purposes intended and were defective to the extent that they were valueless for cultivator or plow wheels. The other testified that, in his opinion, the wheels were absolutely worthless at the time of the trial, which was eight years after the sale, but *might* be worth something for scrap iron, if cut up. On the other hand, Mr. Scott, vice president of the defendant corporation, testified that the wheels, though useless for cultivators, might have been used upon lighter machines, such as hand carts or seeders, where they would be subject to less strain, and also that they might have been made good and substantial wheels, suitable for cultivator wheels, by knocking out the old hub and casting or welding in a new hub, at an expense of twenty to twenty-five cents a wheel, and, further, that it was his recollection that the defendant made an offer to the plaintiff to take the wheels to La Porte and make this change. This testimony stands uncontradicted in the case. There was in fact no attempt to controvert it, and it must be considered as a fact that at an expense of twenty-five cents a wheel, at the most, the wheels could have been made perfect.

The rule is that in case of breach of warranty in the sale of a chattel, where the vendee keeps the property and recoups his damages in an action for the price, the vendor may recover the value of the chattel, if it has any value, notwithstanding its unfitness for the uses for which it was purchased. *Warder v. Fisher*, 48 Wis. 338. And, where a comparatively small outlay will remedy a defect, the purchaser is not entitled to keep the article, and refuse to make the necessary change, and recover the entire purchase price as for an article which is completely worthless, but he should make the change or cause it to be made; and the reasonable expense of making the change will be the ordinary measure of damages. *J. Thompson Mfg. Co. v. Gunderson*, 106 Wis. 449; *Birdsall v. Carter*, 11 Neb. 143. In the pres-

J. I. Case Plow Works vs. Niles & Scott Co.

ent case the testimony is undisputed that the change could have been made, that the wheels would then have been entirely serviceable and suitable for the uses intended, and that the maximum cost would have been twenty-five cents per wheel. We say the testimony was undisputed, because there was no witness who attempted to deny Mr. Scott's statement that these changes could have been made, and the wheels rendered thereby serviceable; and the general statement by Mr. Wallis that the wheels were worthless as plow or cultivator wheels cannot be considered as anything more than a statement that, in the condition in which they were received, they were not suitable for those particular purposes. So the statement of the other witness for the plaintiff that he considered them worthless at the time of the trial cannot be considered as meeting Mr. Scott's testimony, for two reasons: first, because eight years had then elapsed since the sale and delivery of the wheels, and the evidence showed that they had greatly deteriorated by rust; and, second, because he referred to them, evidently, in their condition with the defective hubs and flanges, and did not attempt to deny the feasibility of the substitution of new hubs.

Looking at the finding of the referee and the court, namely, that the wheels were "practically useless and of no market value," it seems equally plain that this does not mean that they were "absolutely worthless." Therefore we feel obliged to hold that it was neither proven nor found that the wheels were worthless, but, rather, that it was proven, without dispute, that they were of some value, and, by the expenditure of twenty-five cents per wheel for new hubs, could have been made entirely serviceable wheels. Under the rules laid down in the cases above named, this sum, viz. twenty-five cents per wheel, would be the proper amount of the plaintiff's damages upon this branch of its claim, which would amount to $1,710.50 for the entire number (6,842) of

defective wheels, to which should be added the necessary freight charges and expenses of furnishing new wheels to replace defective wheels sent out to dealers by plaintiff, which were found to be $334.68; making the total amount of the plaintiff's damages $2,045.18.

Upon the subject of interest upon the plaintiff's damages, both the referee and the circuit judge were evidently in error. They allowed the plaintiff no interest, except from the date of the commencement of the action. It is true that interest, *as such*, is recoverable in actions for the recovery of money upon contract only when the claim is liquidated, or capable of liquidation by reference to reasonably certain market values, and that in such cases it runs from the time when the debtor ought to have paid the debt by the terms of the contract, or from the time fixed by law for its payment (if any such time be fixed), or, in default of either of such dates, from the time of the making of an adequate demand. Such was the holding in the recent case of *Laycock v. Parker*, 103 Wis. 161, but the principles there stated have no application here.

It is, however, quite well established by the preponderance of authority that there are cases for breach of contract, and cases sounding in tort, where the damages are wholly unliquidated, but where they may be fixed by known and reasonably certain market values or other definite standards, where interest is to be allowed from the time of the breach or the commission of the injury. In such cases interest is not allowed, *as such*, but simply *as compensation* for the delay, and in order that the plaintiff may be fully remunerated for his injury. In such cases interest is regarded, in the absence of special circumstances showing greater loss, as measuring the proper compensation for the delay which the plaintiff has suffered in waiting for the payment of his damages; the principle being that the plaintiff will not be fully compensated unless he receive, not only the value of

the thing lost, but receive it, as nearly as may be, of the date of his loss. Such cases are actions for damages for breach of warranty on the sale of chattels, actions for breach of contract for the delivery of chattels, actions for the wrongful conversion of chattels or for the wrongful destruction of property, and perhaps other actions of similar nature. *Ingram v. Rankin*, 47 Wis. 406; 1 Suth. Dam. (2d ed.), 727, § 348; Hale, Dam. 157; Perley, Interest, 92; *Richards v. Citizens N. G. Co.* 130 Pa. St. 37; *Buford v. Gould*, 35 Ala. 265; *Minneapolis H. Works v. Bonnallie*, 29 Minn. 373; *Brown v. Doyle*, 69 Minn. 543; Sedgwick, Dam. (8th ed.), § 316. We are aware that there is some confusion in some of the authorities on this question, but it seems to have arisen from failing to keep in mind the distinction between the allowance of interest *as such*, and the allowance of interest *as compensation* for delay. *Gray v. Central R. Co.* 157 N. Y. 483.

Had the plaintiff in this case paid the full contract price of the wheels, it would, in accordance with these principles, have been entitled to recover the damages resulting from the breach of warranty, viz. $2,045.18, with interest at the legal rate from the time of the delivery of the wheels; but it appearing that there was then due or about to fall due upon the purchase price the total sum of $2,707.35, which is counterclaimed for in this action, the proper rule would necessarily be to deduct the damages from that amount, leaving a balance of $661.07, for which sum, with interest at the legal rate from April 15, 1890, the defendant should have had judgment upon its counterclaim.

*By the Court.*— Judgment reversed, and action remanded with directions to enter judgment for the defendant as indicated in the opinion.