NECEDAH MANUFACTURING CORPORATION, Respondent, vs.
JUNEAU COUNTY, Appellant.
YOUNG, Respondent, vs. JUNEAU COUNTY, Appellant.

*April 9, 1931—January 12, 1932.*

For the appellant there were briefs by *Edward T. Vinopal, Jr.,* district attorney of Juneau county, *J. T. Dithmar* of Elroy, special counsel, and *Olin & Butler* of Madison of counsel, and oral argument by *Mr. Dithmar* and by *Mr. R. M. Rieser* of Madison.

For the respondents there were briefs by *Goggins, Brazeau & Graves* of Wisconsin Rapids, and oral argument by *Ray B. Graves.*

The following opinion was filed June 12, 1931:

Fritz, J. The damages which plaintiffs seek to recover in their respective actions resulted from a single fire, which plaintiffs claimed was caused on June 5, 1925, by the negligent operation of a hoisting engine by defendant's employees. Defendant used the engine in operating a gravel pit on its premises, adjoining plaintiffs' properties. By stipulation the actions were tried together, and the jury in a special verdict found (1) that the fire was caused by sparks or cinders emitted from defendant's engine; (2) that defendant failed to have its engine properly equipped with a spark arrester reasonably sufficient to prevent the escape of sparks or cinders; (3) that the defendant knew that the engine was not so equipped a sufficient length of time before the fire to have enabled it to install a reasonably sufficient spark arrester; (4) that the defendant was negligent

in failing to so equip the engine, and that such negligence was a proximate cause of plaintiffs' damages; and (5) that plaintiffs were not guilty of contributory negligence. The jury also determined the market value of the property which was destroyed.

A review of the record discloses that the evidence well warranted those findings, and that there was no error prejudicial to the defendant excepting in two instructions to the jury, which bear directly on the crucial finding that the defendant, in failing to have the engine properly equipped with a reasonably sufficient spark arrester, was negligent under such circumstances as to render it, as a local, political subdivision of the state, liable for the resulting damages. The question of defendant's failure to exercise ordinary care in that respect was in dispute, and presented an issue for the jury at the conclusion of the trial. In instructing on that issue the jury was told that "The law requires the utmost care in the use of all the reasonable and proper means to prevent damage to the property of third persons. This obligation of care, the want of which constitutes negligence, according to the circumstances, is imposed upon the party who uses the fire. . . ."

As, at most, the defendant was not required to exercise more than ordinary care, it was erroneous to instruct that the law requires the "utmost" care, and that the want of such care constitutes negligence. *Cook v. Doud Sons & Co.* 147 Wis. 271, 280, 133 N. W. 40. Plaintiffs' counsel contend that the term "utmost care" was not improperly used because the court's instruction was merely that such care was required "in the use of all reasonable and proper means to prevent damage to the property of third persons;" and counsel further say: "While this is not equivalent to a statement that the county had the absolute duty to provide all reasonable and proper means, yet such certainly was the duty of the county." But, bearing directly on the subject

of reasonable and proper means to prevent damage, the jury was also instructed as follows:

"There has been something said in this case by counsel in regard to the statutes of this state requiring the maintaining of spark arresters on engines of this kind. The statute in this state on that subject in existence at the time of this fire reads as follows: 'Between March first and November first it shall be unlawful for any logging locomotive, donkey, traction, or portable engine, and all other engines, boilers, and locomotives, except railway locomotives, operated in, through, or near forest, brush, or grass land, which do not burn oil as fuel, to be operated without a screen or wire netting on top of the smokestack and so constructed as to give the most practicable protection against the escape of sparks and cinders from the smokestack thereof. . . .' The jury will notice that this statute includes within its requirements all traction or portable engines and all other engines, boilers, and locomotives except railway locomotives."

Thus, by referring to and quoting from sec. 26.20 (1), Stats., the jury was given to understand that there was applicable to the defendant, and the engine in question, that statutory prohibition of the operation of such an engine without such a screen. And as it was undisputed that the screen had been removed, and, in lieu of that device to prevent the emission of sparks, the smokestack had been increased in height, such an understanding on the part of the jury virtually left no alternative for the jury as to that finding of negligence. Consequently, the statute had a decisive bearing on the jury's finding, and there arises the important question whether, as contended by defendant, the prohibitory provision of that statute is inapplicable to the hurt of the state or a county as one of its subdivisions.

In *Young v. Juneau County,* 192 Wis. 646, 652, 212 N. W. 295, this court said:

"The doctrine of liability of a municipal corporation in cases where the relation is that of one proprietor to another

is so well intrenched in the jurisprudence of the state that it cannot be disturbed, and by this we do not indicate it should be. . . . In this case the county of Juneau maintained upon adjoining premises a defective engine although repeatedly warned of the defect; its officers and agents continued to use the same with the result that the plaintiff sustained damage not as a traveler but as a proprietor. Under such circumstances the case is ruled by *Matson v. Dane County, supra* [172 Wis. 522, 179 N. W. 774], and the cases there cited and considered, and the complaint must be held in that regard to state a good cause of action. It is not necessary to hold that the defendant maintained a nuisance. If as an adjoining proprietor it violated a legal duty owing by it to the plaintiff, liability follows just as in the case of *Bunker v. Hudson, supra"* [122 Wis. 43, 99 N. W. 448].

Those conclusions were vigorously challenged by defendant in these actions, on a motion for rehearing, and on former appeals from orders granting new trials, and again on these appeals. After carefully reconsidering the matter, we adhere to the doctrine of liability of a municipal corporation as there stated. However, although in their former briefs counsel referred to sec. 26.20 (1), Stats., this court did not then determine whether such a general statute as sec. 26.20, prescribing a rule of conduct, or prohibiting certain conduct, is to be construed to include to its hurt the sovereign or one of its local subdivisions, in the absence of apt words to that effect. To now so hold would be a further extension of the doctrine of liability of a municipal corporation, above mentioned, and would necessitate a departure from the rules adopted in this state and elsewhere that general statutes are not to be construed to include, to its hurt, the sovereign; the most general words that can be devised affect not the sovereign in the least, if they may tend to restrain or diminish any of his rights and interests; legislation in derogation of the common law should be strictly construed most favorably to the public corporation and not to the claimant for damages. *Sullivan v.*

*School District,* 179 Wis. 502, 506 *et seq.,* 191 N. W. 1020; *Rusk Farm D. District v. Industrial Comm.* 186 Wis. 232, 234, 202 N. W. 204; *State v. Milwaukee,* 145 Wis. 131, 129 N. W. 1101, 22 Am. & Eng. Ann. Cas. 1212 *et seq.*; *Milwaukee v. McGregor,* 140 Wis. 35, 121 N. W. 642, 17 Am. & Eng. Ann. Cas. 1002; *Schaefer v. Fond du Lac,* 99 Wis. 333, 341, 74 N. W. 810. In the light of those rules, and the entire absence of any terms in sec. 26.20 (1), Stats., because of which it can be inferred that it was intended to be applicable to the hurt of the state or any of its political subdivisions, we have concluded that its provisions were inapplicable in these actions against a county, and that, consequently, the jury should not have been advised that it was unlawful for the defendant to operate its engine without a screen spark arrester. As the instruction may have prejudicially affected the important finding as to the issue of defendant's negligence, defendant is entitled to a new trial.

As stated above, no other error prejudicial to the defendant occurred on the trial. Defendant assigns error in several respects, but no purpose will be served by discussing them, excepting in so far as the questions may arise again during subsequent proceedings herein.

The court rightly denied defendant's motion to remand the case to the circuit court for Juneau county, after the parties had voluntarily stipulated to transfer it to the circuit court for Jackson county for trial on December 2, 1929. In view of that stipulation and the mutual desire to have the files and record remain in Juneau county pending efforts to effect a settlement with the approval of the county board of Juneau county, the court rightly held that its order pursuant to that stipulation was not intended to put the case under the statutory rule of sec. 261.10, Stats., requiring the clerk's fees to be paid and the record to be transmitted to the new place of trial within twenty days from the making

of the order. The effect of that stipulation was to waive the right to have the case tried in Juneau county, and as the circuit court for Jackson county had jurisdiction of the subject matter, the parties could consent to a trial there, and were thereafter bound by their stipulation. *Junek v. Buzzelli,* 148 Wis. 610, 134 N. W. 1124; *Oborn v. State,* 143 Wis. 249, 126 N. W. 737.

The mere correction of the name of the corporation plaintiff from Necedah Manufacturing Company to Necedah Manufacturing Corporation, without any actual substitution of one corporate entity for another, on the first trial, was within the discretion of the judge on that trial. There has been no showing because of which there is any basis for assuming that there was any abuse of that discretion. If, by reason of that change, new defenses were available, defendant would undoubtedly have been granted leave to amend its answer, but it does not appear to have offered any such amendment. In connection with complaining about that correction, defendant assigns as error the failure of the Necedah Manufacturing Corporation to prove the filing of its claim with the county board, and that the county board failed to act upon the claim or refused to allow the same, under sec. 59.76, Stats. That section, so far as here material, provides that no action shall be brought upon any claim against a county without the consent of the county board, unless such claim shall have been duly presented to such board and it shall have failed to act upon the same within the time fixed by law. However, the Necedah Manufacturing Corporation claims that no issue was raised on that proposition. It alleged in its complaint:

"That a written verified statement of the plaintiff's claim was duly filed as required by statute with the county clerk of said county on the 2d day of November, 1925, and was wholly disallowed by action of the county board of supervisors of said county on the 21st day of November, 1925,

which date is within six months from the date 'of the commencement of this action."

That allegation is not denied, unless it was intended 'to do so by defendant's general denial of any knowledge or information sufficient to form a belief. As the filing and acting on the claim by the county board were required by statute, and the facts in relation thereto were matters of record within the knowledge of the county officials charged with answering the complaint, a mere denial of sufficient knowledge or information is evasive and defective pleading, and insufficient to constitute an effective denial. *Carpenter v. Rolling,* 107 Wis. 559, 83 N. W. 953; *Union L. Co. v. Chippewa County,* 47 Wis. 245, 2 N. W. 281; *Elmore v. Hill,* 46 Wis. 618, 1 N. W. 235; *Goodell v. Blumer,* 41 Wis. 436; *Mills v. Jefferson,* 20 Wis. 50. Consequently, the plaintiff's allegations as to the proper filing and disallowance of its claim stand as admitted. In the first instance, when the word "Company" was erroneously used in plaintiff's corporate name instead of the word "Corporation," the admission, strictly speaking, was only as to that erroneous name; but after that mistake was corrected by proper amendment and defendant thereafter failed to positively deny the fact of the alleged filing and disallowance of the claim of the Necedah Manufacturing Corporation, the allegations to that effect must be deemed admitted. On the other hand, the mere correction of the mistake in the summons and complaint by substituting the word "Corporation" for "Company" in plaintiff's corporate name, did not cause the commencement of the action to date from the date of such amendment, so that there was a failure to bring the action on the claim within six months after disallowance, because of which the action became barred under sec. 59.76 (2), Stats. The mere correction of plaintiff's name by amendment did not constitute the addition or sub-

stitution of a new party as plaintiff, or the commencement of a new action at that time by the correctly named plaintiff. The rightly named plaintiff had been plaintiff—although misnamed—since the very commencement of the action, and its rights, so far as sec. 59.76 (2) is concerned, are to be determined as of that earlier date.

Defendant's contention that the failure of plaintiffs to join as parties defendant the employees of defendant who negligently operated the engine is fatal to the verdict, is without merit. It does not appear that defendant by timely motion applied to have any employee made a party to the action. Even if there had been such a motion there is no showing because of which it appears that it would have been an abuse of discretion to deny the application. Likewise there was no error in refusing to require the plaintiffs to join as parties certain insurance companies, and to compel plaintiffs' attorneys to fully disclose the extent of the interests of those companies. Those companies, upon paying to plaintiffs the amounts due under policies of insurance on the property destroyed, had become subrogated to plaintiffs' rights against the defendant, and had then, by assignments which are absolute in form, transferred to plaintiffs all of their rights and claims against the defendant. By virtue of those assignments plaintiffs were authorized to sue thereon as the real parties in interest, even if it had appeared that by collateral agreement plaintiffs had contracted to pay over to the assignors part of the amounts ultimately collected (*Hankwitz v. Barrett,* 143 Wis. 639, 643, 128 N. W. 430) ; or that the transfers to plaintiffs were colorable only, unless it had also appeared that rights of creditors were involved, or that defendant's right to interpose some defense or proposed counterclaim would be cut off by the assignments (*Chase v. Dodge,* 111 Wis. 70, 86 N. W. 548).

Defendant also complains because of the refusal of the court to submit to the jury three questions, viz. (in sub-

stance) : (1) Was the engine properly equipped with an extension of the smokestack, reasonably sufficient to prevent the escape of live sparks and cinders? (2) Did the engine emit live sparks and cinders on June 5, 1925? (3) Was the fire caused by live sparks and cinders emitted from defendant's engine? All that was essential in those proposed questions as a finding of ultimate fact upon which plaintiffs' recovery depended was sufficiently submitted in the first question prepared by the court, viz.: "Was the fire which burned the factory building of the plaintiff, Necedah Manufacturing Corporation, on June 5, 1925, caused by sparks or cinders emitted from the defendant's hoist engine?" The jury's affirmative answer to that question necessarily, in effect, found and answered (a) that the engine did emit live sparks and cinders on June 5, 1925; (b) that such sparks caused the fire which destroyed plaintiff's buildings; (c) and that the engine was not properly equipped with an extension of the smokestack reasonably sufficient to prevent the escape of such sparks and cinders. For the jury in its answer to the first question submitted could not logically find that the fire which burned plaintiff's buildings was caused by sparks or cinders emitted from defendant's engine, without having been convinced that the engine then (a) emitted live sparks or cinders, (b) which caused the fire; and consequently that (c) the engine was not properly equipped to sufficiently prevent such escape of sparks or cinders. Inasmuch as that is the effect of the jury's answer to the first question submitted by the court, the propositions designated above as (a), (b), and (c) sufficiently disposed of the issues which defendant sought to have submitted in its proposed questions numbered 2, 3, and 1, respectively.

The defendant's contention that the defendant is not liable for the taxable costs of the action is fully answered by sec. 271.23, Stats., which expressly provides that "In all actions by or against a county . . . costs shall be awarded to the prevailing party as in actions between individuals."

The defendant also challenges the court's order for judgment in so far as it allows the recovery of interest from the date of the commencement of the actions, on the damages which were assessed by the jury. Defendant contends that the plaintiffs' claims were unliquidated and not liquidable until the rendition of the verdict; and that under such circumstances there can be no recovery for interest prior to the date of the verdict.

In their respective complaints the amounts of damage claimed are as follows: Necedah Manufacturing Corporation, $25,688.38; H. L. Young, $5,100. On the trial it appeared that there had been no active market or demand for, or sales of, the kind of property which was destroyed. Such evidence as there was regarding the value of the corporation's property placed the value of its building at $5,000 to $10,235, and the value of the contents thereof as high as $13,000. As to Young's property, the range of the evidence as to value was from $1,600 to $3,000 for the building, and $1,584 to $1,600 for the contents.

The jury found that the fair market value of the destroyed property was:

Necedah Manufacturing Corporation:     H. L. Young:
    Building, $5,000.                                      Building, $1,800.
    Machinery, $5,526.                                  Contents, $600.
    Rowboat motor and accessories, $10.
    Other personal property, $100.

The jury's valuation of all of the buildings only differed to the extent of $200 from the valuations assessed for purposes of taxation, and those figures, as well as the information as to the value of the buildings and contents which had been acquired by the tax assessor, were undoubtedly available to the defendant at all times since the fire.

There has been some uncertainty and confusion as to the right to recover interest on unliquidated damages, which are recoverable in actions *ex contractu* or *ex delicto.* The

problems as to when interest is recoverable on unliquidated claims, which can be liquidated by reference to reasonably certain standards of measurement, and the difficulties encountered in endeavoring to state definitely what constitutes such reasonably certain standard of measurement, are disclosed by the extended consideration which has been given to the subject in such works as Sedgwick on Damages (9th ed.) vol. 1, §§ 315–322. In this state those problems and difficulties, the conflict in the decisions, and the development of the law in relation to the recovery of interest on unliquidated claims, received such careful consideration in *Laycock v. Parker,* 103 Wis. 161, 178 *et seq.,* 79 N. W. 327, that there is now no occasion for again reviewing decisions antedating that case. The conclusions stated in the instructive opinion in that case are sound. In that action plaintiff sought to recover the balance of the contract price due on the performance of a building contract and also the reasonable value of extra labor and materials furnished. Defendant counterclaimed for breach of contract and defective performance. All items, excepting the original contract price, were unliquidated. The trial court allowed interest from the commencement of the action. On appeal this court held that when a breach of contract occurs and a debtor is in default in paying money, or delivering property, or rendering services, and hence liable for pecuniary damages, the amount of which is liquidable, then the creditor is entitled to interest as part of his compensatory damages—regardless of whether it was money or property or services which he was deprived of—from the time payment or performance was due by the terms of the contract, or, if that was not specified, then from the time that demand was made; and if no demand was made prior to the time of the commencement of the action, then from that time. In that connection it was held that the amount of the dam-

ages is liquidable if there is a "reasonably certain standard of measurement by the correct application of which one can ascertain the amount he owes." In that event "he should equally be held responsible for making such application correctly, and liable for interest if he does not. . . . If one having a commodity to purchase or certain services to hire, can by inquiry among those familiar with the subject learn approximately the current prices which he would have to pay therefor, a market value can well be said to exist, so that no serious inequity will result from the application of the foregoing rule to those who desire to act justly; especially in view of the other rule of law that a debtor can always stop interest by making and keeping good an unconditional tender, thus giving him a substantial advantage over a creditor, who has no such option." *Laycock v. Parker, supra,* p. 186.

The question as to the recovery of interest on unliquidated demands arose again in *J. I. Case Plow Works v. Niles & Scott Co.* 107 Wis. 9, 82 N. W. 568. That action was brought to recover unliquidated damages for breach of warranty because of the delivery of defective wheels. The court followed the decision in *Laycock v. Parker, supra,* and said that the rule was also applicable to cases sounding in tort.

"It is, however, quite well established by the preponderance of authority that there are cases for breach of contract and cases sounding in tort, where the damages are wholly unliquidated, but where they may be fixed by known and reasonably certain market values or other definite standards, where interest is to be allowed from the time of the breach or the commission of the injury. In such cases interest is not allowed *as such,* but simply *as compensation* for the delay, and in order that the plaintiff may be fully remunerated for his injury. In such cases interest is regarded, in the absence of special circumstances showing greater loss,

as measuring the proper compensation for the delay which the plaintiff has suffered in waiting for the payment of his damages; the principle being that the plaintiff will not be fully compensated unless he receive, not only the value of the thing lost, but receive it, as nearly as may be, of the date of the loss. Such cases are actions for damages for breach of warranty on the sale of chattels, actions for breach of contract for the delivery of chattels, actions for the wrongful conversion of chattels or for the wrongful destruction of property, and perhaps other actions of similar nature. . . . We are aware that there is some confusion in some of the authorities on this question, but it seems to have arisen from failing to keep in mind the distinction between the allowance of interest *as such,* and the allowance of interest *as compensation* for delay. *Gray v. Central R. Co.* 157 N. Y. 483, 52 N. E. 555."

Next, in *Remington v. Eastern R. Co.* 109 Wis. 154, 164, 84 N. W. 898, 85 N. W. 321, the question arose in an action to recover for the reasonable value of legal services. Although the claim was not fully liquidated, it was held "capable of liquidation by reference to reasonably certain standards of value for professional services;" also that interest was to run only from the time that a demand was made "sufficiently specific to inform the debtor of the claim made so that he can ascertain therefrom the amount he ought to pay by application to the standard above set forth;" and that the demand dates from the commencement of suit when there was none prior thereto.

In *McCall Co. v. Icks,* 107 Wis. 232, 83 N. W. 300, in an action for unliquidated damages for breach of contract, the court again said: "Interest is allowed as part of plaintiff's damages and is necessary to give complete indemnity for the breach of the contract. It is not allowed as interest, strictly so called."

In *Shaw v. Gilbert,* 111 Wis. 165, 196, 86 N. W. 188, that rule as to interest was applied in an action for deceit for

damages sustained by plaintiff in extending credit to one whose financial responsibility had been fraudulently misrepresented by defendant. It was held that plaintiff was entitled to interest from the time she suffered her loss, which did not occur until she was entitled to insist on payment by the debtor either according to her contract with the debtor or the contemplated dealings between the parties. The court said:

"In modern times interest has come to be recognized as a legal right enjoyed by a claimant, not merely as a mulct imposed on a defendant. . . . Treatment of interest as damages, and in the discretion of the jury, is still maintained to some extent, more in England than in America. In the latter, that view is becoming more and more confined to classes of recovery where the whole subject of damages, as measured by money, rests in the discretion of the jury; such as for personal injuries, defamation, and the like, where, as it is said, the injury has no real money value. Perley, Interest, 194. In such cases the rule amounts to no more than that the lapse of time may, in the judgment of the jury, have increased the damages, and in estimating such increase they may use legal rates of interest as a basis. On the other hand is that class of cases where the damage is of a pecuniary character, measurable in money with reasonable certainty, as where the conduct of the defendant has deprived the plaintiff of money or of property of reasonably definite money value. In that class of cases the trend of modern decision is to the proposition that full compensation can be made only by requiring reimbursement of the money value and the interest such money would presumably have earned in the hands of the party deprived of it. Interest is allowed as damages, it is true, but as compensatory damages, measured according to a certain rule of law which courts are bound to apply and not to leave subject to the discretion of juries. With this modern attitude this court has placed itself in entire accord, after careful deliberation, in *J. I. Case Plow Works v. Niles & Scott Co.* 107 Wis. 9, 82 N. W. 568."

Thereafter, the recovery of interest on unliquidated claims was allowed in the following cases: *Gross v. Heckert,* 120 Wis. 314, 330, 97 N. W. 952, which was an action by a lessee for damages sustained because of a lessor's breach of a lease by failing to give possession; in *Darlington v. J. L. Gates Land Co.* 151 Wis. 461, 466, 138 N. W. 72, 139 N. W. 447, which was an action based on a complaint which alleged facts that constituted causes of action for fraud in misrepresenting that timber was a part of a purchase, and also for breach of warranty; in *Bagnall v. Milwaukee (City),* 156 Wis. 642, 649, 146 N. W. 791, which was an action to recover the depreciation in value of land because of the building of a viaduct on the street on which the land abutted; in *Voigt v. Milwaukee County,* 158 Wis. 666, 670, 149 N. W. 392, which was an action for depreciation in the market value of land because of the building of a viaduct on the opposite half of a street on which land abutted; in *Peters v. National Surety Co.* 167 Wis. 131, 163, 166 N. W. 43, which was an action by a subcontractor against the surety of the principal contractor to recover for work performed; and in *Edward E. Gillen Co. v. John H. Parker Co.* 170 Wis. 264, 277, 171 N. W. 61, 174 N. W. 546, which was an action by a subcontractor against the principal contractor for unliquidated damages because of the contractor's delay in having the premises ready for the subcontractor to work.

On the other hand, without expressly overruling or disapproving that rule as to interest, as applied in the cases cited above, it was not followed in *Olson v. Laun,* 170 Wis. 106, 111, 174 N. W. 473; *First Wis. Trust Co. v. Schmidt,* 173 Wis. 477, 483, 180 N. W. 832; and *Zeidler v. Goelzer,* 191 Wis. 378, 211 N. W. 140. *Olson v. Laun, supra,* was an action for deceit to recover damages sustained by a vendee on a sale of land, the value of which had been mis-

represented by the defendant. The vendee sought to recover interest on his damages from the date of the consummation of the deal. It was held that he was entitled to interest only from the date of the verdict. In *First Wis. Trust Co. v. Schmidt, supra,* the action was to recover damages for personal injuries and death sustained by reason of defendant's negligence. On the trial the parties stipulated that $407.50 had been expended for hospital, doctor and funeral expenses, and the trial court allowed interest on those expenses from the date of the accident. On appeal interest was allowed only from the date of the verdict. That was also the conclusion in *Zeidler v. Goelzer, supra,* which was likewise an action for personal injuries. But it does not appear that the plaintiff claimed interest prior to the date of the verdict.

The decisions in the last three cases cited are in conflict with the rule applied in the preceding decisions since *Laycock v. Parker, supra.* However, that conflict does not appear to have been due to an intention to abandon the rule established in that case. At all events, after full consideration of the authorities, it is our conclusion that when, because of a breach of contract or a tort, a party is liable and in default in paying for items of damage, the pecuniary amounts of which are liquidable or measurable in money with reasonable certainty, then full compensation will be made only by payment of the money value of such items of damage, including the interest which such an amount of money would presumably have earned in the hands of the party who was deprived of it. He does not receive full compensation for the loss occasioned by the breach of contract or the tort unless he is also compensated for such interest, which is part of his compensatory damages, measured according to a rule of law which courts are bound to apply. It is not in the nature of a penalty which it is discretionary with a jury or judge to impose or to disregard. He is

entitled to recover such interest on all such items of damage from the time that the probable pecuniary amount or money value thereof could have been computed or liquidated to a reasonable certainty by ascertaining the then current market or reasonable value, and the time that payment thereof first became due because of the terms of a contract, or, if none, then because of a demand for payment. If there was no demand made before the commencement of the action, then interest does not begin to run until that time.

In the case at bar the market or reasonable value of the destroyed property was ascertainable to a reasonable certainty by inquiry among those familiar with the subject and current prices, and by the correct application of reasonably certain standards of measurement and valuation when plaintiffs filed their claims with the county board; and, as the proper filing of those claims was equivalent to a demand for payment, interest commenced to run as of that date. As plaintiffs are entitled to interest as part of their recoverable compensatory damages, if any such damages were caused by negligence which renders the defendant liable under the established law of this state, there is no need for a special statute expressly subjecting the defendant, as a municipal corporation or arm of the state, to liability for such interest. In *Bagnall v. Milwaukee, supra,* and *Voigt v. Milwaukee County, supra,* no such express statutory provision was considered necessary in order to hold the city and the county of Milwaukee liable for interest on the amount of property damage caused by torts committed by those municipalities. As there was no error affecting the jury's verdict in relation to the value of the property destroyed, there is no occasion for a retrial as to the amount of the damages. The new trial will be confined to the question of whether the defendant was negligent in failing to have its hoisting engine equipped with a proper spark

arrester when the spark was emitted which caused the fire that destroyed plaintiffs' property. *Crossett v. Goelzer,* 177 Wis. 455, 470, 188 N. W. 627.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant a new trial of the issue stated in the opinion.

The following opinion was filed January 12, 1932:

PER CURIAM (*on motion for rehearing*). By the mandate the cause was remanded for a new trial upon the question as to whether or not the defendant county was guilty of negligence in failing to maintain its engine in a proper condition. The right to a new trial was based upon the proposition that the instruction of the court upon question (4), to the effect that the statute quoted in the opinion required the defendant to maintain upon its smokestack a screen or wire netting, was prejudicial to the defendant. In response to the motion for a rehearing we have reconsidered this matter and are of the opinion that although the statute does not apply to the defendant in the sense that it could be sued for a penalty for failure to conform to its provisions, it does prescribe a standard of care which users of engines are required to observe as a matter of law.

In *Kellogg v. Chicago & N. W. R. Co.* 26 Wis. 223, the court said:

"Fire is an agent of an exceedingly dangerous and unruly kind, and, though applied to a lawful purpose, the law requires the utmost care in the use of all reasonable and proper means to prevent damage to the property of third persons. This obligation of care, the want of which constitutes negligence according to the circumstances, is imposed upon the party who uses the fire, and not upon those persons whose property is exposed to danger by reason of the negligence of such party."

While this language was used in a case where liability was claimed because of the setting of a fire by a railway engine, it lays down a general well-recognized principle of law.

In *Read v. Morse,* 34 Wis. 315, the court said:

"Doubtless a person who employs the element of fire to generate steam for propelling power, or who employs it for any other purpose under circumstances which render it especially dangerous to others, is held to the exercise of more care and caution in its use than is one who employs the same element for a less dangerous purpose. Yet the *degree* of care required is the same. In either case reasonable care, or, what is the same thing, ordinary care, only, is required. The term 'reasonable care' has no fixed, definite signification, but is a relative term. The caution which persons of ordinary prudence would exercise in any given case is 'reasonable care,' as the term is used in the law. . . .

"The *'utmost care'* which the law imposed upon the defendants relates only to the use *'of all reasonable and proper means'* to avoid damage, and does not extend to all possible precautions against injury."

It was the contention of defendant that, by extending its smokestack to a height of some seventeen feet and introducing two jets of steam into the stack, sparks were efficiently arrested, and that such a device was a reasonably sufficient spark arrester.

Question (2) was as follows:

"Did the defendant Juneau County, at the time of the fire in question, fail to have its hoist engine properly equipped with a spark arrester reasonably sufficient to prevent the escape of sparks or cinders?"

Upon this question the court instructed the jury:

"The burden of proof in answering this question is also upon the plaintiffs.

"This is a question of fact to be determined by the jury. It is the contention of the plaintiffs that there was no spark arrester . . . reasonably sufficient to prevent the escaping

of sparks, that the engine would in fact emit hot cinders or sparks when being used in the operation of the drag line used in connection with said engine.

"On the other hand, it is the contention of the defendant that, while no spark arrester was used, that an extension had been placed on the smokestack of said engine, and that said extended smokestack, due to the live-steam exhaust entering the stack immediately above the flues of the engine, had the same effect as a spark arrester on said engine.

"It is for the jury to determine by its answer to this question whether or not the defendant, Juneau County, failed to have its hoist engine properly equipped with a spark arrester reasonably sufficient to prevent the escape of sparks and cinders. If you find by a preponderance of all the credible evidence in the case that Juneau County did so fail, then your answer to this question should be 'Yes.' If you do not so find, then your answer to this question should be 'No.' "

Under this instruction the defendant's contention was plainly submitted to the jury and the jury's attention specifically directed to the issue made by the claims of the respective parties. By answering this question "Yes" the jury found that the substituted device was not a reasonably sufficient spark arrester, and under all of the authorities it was negligence as a matter of law for the defendant to operate an engine without a reasonably sufficient spark arrester. There was no screen or netting in the stack in question, so that when the jury found that the lengthening of the stack and the introduction of the steam jets into the stack did not operate as a sufficient spark arrester, they found a failure on the part of the defendant to comply with the standard of care required by the law in the operation of an engine. For reasons already fully stated and elaborated upon in this case, this rule applied to the defendant as an adjoining proprietor.

The court's erroneous instruction upon question (4), which relates to the exercise of ordinary care, was not prejudicial for the reason that the jury having found, in

response to questions (2) and (3), that the spark arrester was not reasonably sufficient and that the defendant had knowledge thereof, the defendant failed in the operation in question to exercise ordinary care as a matter of law.

The former mandate is vacated and set aside and the judgment appealed from is affirmed. No costs to be taxed, defendant to pay the clerk's fees.

Mr. Justice FRITZ dissents as to modification of mandate.