**FATTORE COMPANY, INC.,**
Plaintiff-Appellee,

v.

**METROPOLITAN SEWERAGE COM-
MISSION OF the COUNTY OF MIL-
WAUKEE, Defendant-Appellant.**

Nos. 73–1660 and 73–1661.

United States Court of Appeals,
Seventh Circuit.

Argued May 24, 1974.

Decided Oct. 25, 1974.

Ewald L. Moerke, Jr., Stewart G. Honeck, Milwaukee, Wis., for Metropolitan Sewerage Comm.

Elwin J. Zarwell, Richard W. Cutler, Peter W. Bunde and Ronald L. Wallenfang, Milwaukee, Wis., for Fattore Co.

Before PELL and STEVENS, Circuit Judges, and LARAMORE, Senior Judge.[*]

LARAMORE, Senior Judge.

This case is before the court on appeal by each party; both the plaintiff and defendant requesting review of the District Court's findings regarding damages due and the defendant also requesting review of a finding favoring the payment of prejudgment interest.[1]

---

[*] Senior Judge Don N. Laramore of the United States Court of Claims is sitting by designation.

1. This case is the second part of a bifurcated trial that originated, based on diversity of citizenship, in United States District Court for the Eastern District of Wisconsin. The issues developed from a dispute regarding a "changed" condition and liability under the "changed" conditions and equitable adjustment provisions of a government contract involving the construction of a sewer tunnel for the defendant. On the merits, the District Court, theorizing that a broad exculpatory clause dominated, found the defendant free from liability under the changed conditions clause. On the subsequent appeal the issues were divided into the questions of liability and amount. This court reversed and remanded to the District Court for a determination of the amount of the equitable adjustment. See, Fattore Co. v. Metropolitan Sewerage Commission of Milwaukee, 454 F. 2d 537 (7 Cir. 1971).

The facts considered relevant to the issues are stated in the opinion. For a more detailed discussion of the facts germane to liability and remand on damages see Fattore Co., id.

The main issues in this case are the amount of damages under a changed condition and equitable adjustment provision of a municipal government construction contract and prejudgment interest on such a claim. The District Court, after carefully considering the evidence in its totality, found plaintiff entitled to a "jury verdict" equitable adjustment of $1,500,000. The finding was based on this court's reasoning in the first appeal that a broad exculpatory clause should not operate to render another clause meaningless, freeing defendant from its liability.[2] The judgment included superintendence, overhead expense, home office expense, profit and any and all other items aside from interest. Prejudgment interest was awarded at the rate of five per cent per annum from and after June 18, 1964,[3] the date all plaintiff's accounting data necessary to compute the equitable adjustment under the changed conditions clause was complete and the retained percentage was paid.

Plaintiff presented its damages,[4] in a very detailed accounting, as the difference between the actual costs[5] incurred, adjusted downward for events unrelated[6] to the changed condition, and its bid.[7] Plaintiff argues its method for computing damages is the most reliable and is clearly supported by the evidence; therefore, the "jury" type verdict awarded is inappropriate, surpassed by plaintiff's proof. In effect, plaintiff contends that it used reasonable costs, not total costs, because it only used items affected by the changed conditions. Accordingly, the increase in cost was directly related to the increase in time required to complete the contract due to the changed condition.[8] Plaintiff also contends that it is correct and has always been appropriate for an equitable adjustment to include a profit[9] because it would be "inequitable" for one to do two extra years work under the circumstances involved in this case, with a substantial increase in investment, for no additional return.

Defendant contends plaintiff, in effect, used the normally unacceptable total cost method of computing damages and that the total cost method is not acceptable because here there is an alternative in reasonable costs which the plaintiff failed to prove. Further, there is no right to recover the costs unreasonably incurred, when the changed geological conditions were discovered, by abandoning the shield technique for hand mining.[10] Accordingly, failure to

2. "Moreover, in the presence of a 'Changed Conditions' clause such as Paragraph 20, broad exculpatory clauses do not preclude the contractor-bidder from relying upon the existence of subsurface conditions of the nature indicated by the contract specifications." *Id.*, at 542. *See also*, Woodcrest Construction Co. v. United States, 408 F.2d 406, 410, 187 Ct.Cl. 249 (1969) and cases cited therein.

3. At the first trial defendant argued as an affirmative defense that final payment, precluding plaintiff's claim for equitable adjustment, occurred on June 18, 1964. Plaintiff, while accepting the retained percentage unequivocally reserved the right to pursue its equitable adjustment due to the "changed condition." The District Court found for the defendant and this court reversed, based on a determination of objective factors considered in the light of attending circumstances, that such was not the parties' intentions. Fattore Co. v. Metropolitan Sewerage Commission of Milwaukee, *supra*.

4. $2,015,491.52.

5. $4,972,170.00.

6. As an example, a manhole collapse occurred; it delayed mining work approximately eight days.

7. $2,946,822.00.

8. The mining portion of the job was actually completed in 121 weeks, rather than the approximated 40 weeks anticipated mining time on which the bid was based. There was a direct correlation between the increase in expenses and the increase in time to finish the job.

9. Bennett v. United States, 371 F.2d 859, 178 Ct.Cl. 61 (1967); General Builders Supply Co. v. United States, 409 F.2d 246, 187 Ct. Cl. 477 (1969).

10. This contention was clearly rejected in this court's first opinion regarding liability: "However, the actual underground conditions encountered in the performance of the work

**4**

use the proper proof of damages, reasonable costs, requires dismissal of the case. It is further alleged that even if the equitable adjustment were applicable, it would be error to include profit because such an adjustment should only permit the contractor to break even on extra costs due to changed conditions. The defendant also asserts award of prejudgment interest is contrary to law because there is a genuine dispute regarding the amount due; it cannot be determined with the reasonable certainty necessary to bring it within the definition of liquidable or liquidated damages entitling it to an award of prejudgment interest.

The defendant's argument aimed at barring correction of a wrong for failure of proof, is untenable based on the principle that a judicially recognized wrong is not a bar to recovery of damages that would be difficult to establish with precision. Given the plaintiff's adequate proof, including the correlation between the increase in time and expense due to the changed condition, it would be unjust to only permit recovery for a recognized wrong by holding plaintiff to a near impossible standard of requiring him to list with mathematical precision the amount of every item of damage flowing from that wrong. *See also,* Dale Construction Co. v. United States, 161 Ct.Cl. 825 (1963); Luria Bros. & Co. v. United States, 369 F.2d 701, 712–713, 177 Ct.Cl. 676, 695–696 (1966); Adams v. United States, 358 F.2d 986, 993, 175 Ct.Cl. 288, 299 (1966); Specialty Assembling & Packing Co. v. United States, 355 F.2d 554, 572–573, 174 Ct.Cl. 153, 184 (1966).

■ It is well settled that the one liable for established and proven harm shall not escape monetary responsibility because the one harmed failed to prove his damages with mathematical precision. This view is in consonance with the Supreme Court case, Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, at 562–563, 51 S.Ct. 248 at 250, 75 L.Ed. 544 (1931), which stated:

∗ ∗ ∗ The rule which precludes the recovery of uncertain damages applies to such as are not the certain result of the wrong, not to those damages which are definitely attributable to the wrong and only uncertain in respect of their amount. ∗ ∗ ∗ it will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result be only approximate.

■ In addition, recognition of defendant's argument concerning damages would have the effect of negating both the first decision in this case, Fattore Co. v. Metropolitan Sewerage Commission of Milwaukee, *supra,* which found plaintiff was entitled to relief, and the policy considerations upon which the changed conditions and equitable adjustment provisions are based. The purposes for institution and utilization of these two provisions includes eliminating the contractor's need for placing large contingencies and unknown costs into his pricing for the great risk he may be taking by encountering adverse subsurface conditions, Kaiser Industries Corporation v. United States, 340 F.2d 322, 169 Ct.Cl. 310 (1965), and providing administrative remedies involving negotiation for what otherwise would amount to a breach of contract requiring litigation for resolution.[11] The bidder will neither enjoy windfalls nor suf-

differed materially from those indicated by the defendant's test borings. Solid rock and mixed face were encountered at the sewer grade throughout the first 496 feet of the tunnel. Therefore, the shield method of tunneling and constructing the concrete sewer had to be abandoned, and once abandoned, it is impossible to again begin using the shield when conditions permit. The plaintiff was unable to use the shield and as a result the tunneling costs were substantially increased." Fattore Co. v. Metropolitan Sewerage Commission of Milwaukee, *supra,* 454 F.2d at 539–540.

11. The facts in both this case and Fattore Co. v. Metropolitan Sewerage Commission of Milwaukee, *supra,* make it clear defendant refused to resort to these government contract devices to alleviate the potential harm; *i. e.,* the Commission engineers refusal to act on the changed conditions and a failure to attempt negotiation of the equitable adjustment.

fer disaster. The municipal government benefits or pays according to the occurrence of adverse conditions. Foster Construction C. A. & Williams Bros. Co. v. United States, 435 F.2d 873, 887, 193 Ct.Cl. 587, 614 (1970). The contract solicitation procedure followed by defendant in this case is the common one for reducing costs by making the borings and providing the information to the bidders. In such a situation " * * * [i]t is settled that the [municipal] government is deemed to warrant the adequacy of its plans and specifications to the extent that compliance therewith will result in satisfactory performance." Jefferson Construction Company v. United States, 392 F.2d 1006, 1011, 183 Ct.Cl. 720, 727 (1968).

Foster Construction C. A. & Williams Bros. Co., *supra*, 435 F.2d at 875, held:

* * * all that is required is that there be enough of an indication on the face of the contract documents for a bidder reasonably not to expect "subsurface or latent physical conditions at the site differing materially from those indicated in this contract." [12]

■ Equally settled is the " * * * axiom that the parties may, by virtue of their contract, convert into a dispute arising under the contract a claim which is the result of deficient plans or specifications and, in the absence of an agreement, would be a sufficient predicate for an action based on a breach of the [municipal] government's implied warranty. Additional compensation which may be awarded for the damages incurred as a result of the deficient plans is limited by that conversion to the specific equitable adjustment provided for in the contract." [Jefferson Construction Co. v. United States, *supra*, 392 F.2d at 1011.] Accordingly, the parties here are bound by their contract

and are, therefore, protected and limited to the amount of damages permitted through the operation of the equitable adjustment in that contract.

■ Given the inherently imprecise nature of an equitable adjustment, the existence of sufficient evidence for a court to come to a fair and reasonable conclusion, and the quantum issue presented in this case, the District Court's "jury verdict" must stand.

"Jury verdicts" have always been supported if there was clear proof that the contractor was injured and there was no more reliable method for computing damages provided that the evidence adduced was sufficient to enable a court or jury to make a fair and reasonable approximation. Specialty Assembling & Packing Co. v. United States, *supra; see,* River Construction Corp. v. United States, 159 Ct.Cl. 254, 271 (1962); Western Contracting Corp. v. United States, 144 Ct.Cl. 318, 320, 333–336 (1958); Brand Investment Co. v. United States, 58 F.Supp. 749, 751, 102 Ct.Cl. 40, 45 (1944), cert. denied, 324 U.S. 850, 65 S.Ct. 853, 89 L.Ed. 1410 (1945).

The record in this case is replete with evidence upon which a jury or court could fairly and reasonably determine the approximate amount of damages.

■ Plaintiff, by selecting and compiling all the costs of certain items that directly related to the changed condition, has rhetorically labeled its cost presentation as reasonable because this selective process does not include "all" of the costs. However, the "total cost" concept, even when applied to selective items and rhetorically labeled "reasonable" based on selectivity of items, cannot be accepted. *See,* F. H. McGraw & Co. v. United States, 130 F.Supp. 394, 131 Ct.Cl. 501 (1955) and Oliver-Finnie Co. v. United States, 279 F.2d 498, 150

---

12. Generally, in the type of construction contract situation presented in this case, the doctrine of implied warranty of specifications will render the government liable for a changed condition. *See,* United Contractors v. United States, 368 F.2d 585, 598, 177 Ct.

Cl. 151, 165–166 (1966); Peter Kiewit Sons' Co. v. United States, 74 F.Supp. 165, 167–168, 109 Ct.Cl. 517, 520–523 (1947); H. L. Yoh Co. v. United States, 288 F.2d 493, 153 Ct.Cl. 104 (1961).

**6**

Ct.Cl. 189 (1960) for complete rejection of the total cost concept.

Total costs cannot be generally accepted as the end for determining an equitable adjustment in a fixed-price contract because it would undermine the prospective costing approach thus negating the contract's basic incentive character.[13]

F. H. McGraw & Co. v. United States, *supra*, 130 F.Supp. at 400, held:

This method of proving damage is by no means satisfactory, because, among other things, it assumes plaintiff's costs were reasonable and that plaintiff was not responsible for any increase in cost, and because it assumes plaintiff's bid was accurately computed, which is not always the case by any means.

■ A pure total cost method, even when applied to selective items, would allow for correction of bidding errors and reward possible inefficiency.[14] However, the defendant failed to offer an alternative for measuring damages in this case.[15] In this absence of a more reliable method for computing damages, justice, in this case, could only be done by resorting to the jury type verdict.[16] Western Construction Corp. v. United States, *supra*; Dale Construction Co. v. United States, 168 Ct.Cl. 692, 729 (1964); Houston Ready-Cut House Co. v. United States, 96 F.Supp. 629, 119 Ct.Cl. 120 (1951); Riess & Weinsier, Inc. v. United States, 116 F.Supp. 562, 126 Ct.Cl. 713 (1953).

The District Court addressed itself to the heart of the matter, the monetary loss suffered by the contractor as the di-

rect result of the Commission's wrong, and in so doing avoided the danger of accepting the total costs as the true loss following from the wrong. Although it did not fully articulate its computations, the District Court's effort represents what we find to be its best judgment on the record before it, and this is all that the parties have a right to expect. Specialty Assembling & Packing Co. v. United States, *supra*.

■ The short answer on the issue of including profit in the equitable adjustment is that profit is allowed on contract adjustments involving changed conditions and equitable adjustments. When the dispute arises under an equitable adjustment clause and is confined to that clause, profit is payable on the specific cost items involved. United States v. Callahan Walker Construction Co., 317 U.S. 56, 61, 63 S.Ct. 113, 87 L. Ed. 49 (1942); Bruce Construction Corp. v. United States, 324 F.2d 516, 163 Ct.Cl. 97 (1963).

Also, in General Builders Supply Co. v. United States, 409 F.2d 246, 249, 187 Ct.Cl. 477, 485 (1969), it was held that an equitable adjustment can cover an allowance for a profit on work actually done but does not encompass unearned or anticipated profits.

■ The award of prejudgment interest in this case is just and proper. The major principles and guidelines for making such an award in Wisconsin were well stated in Laycock v. Parker, 103 Wis. 161, 79 N.W. 327, 335 (1899):

* * * The true principle, which is based on the sense of justice in the

---

13. *See*, Spector, An Analysis of the Standard "Changes" Clause, 25 F.Bar Jrnl. 177 (1965).

14. Id., note 13.

15. Note 11, *supra*; note 19, *infra*.

16. The District Court began with the plaintiff's total cost and moved to a more reasonable figure by reducing it for what it considered, based on the evidence, to be questionable or dubious amounts, as in the case of the equipment costs which were found to be excessive by a large amount.

This use of "total costs" does not appear unreasonable. It recognizes the fact that total costs have probative value and should be offered as evidence on the issue of reasonable costs. *See*, Spector, An Analysis of the Standard "Changes" Clause, 25 F.Bar Jrnl. 177 (1965), *supra*, at note 13. On the other hand, it does not go to the other extreme of accepting the incurred cost approach for determining an equitable adjustment. *See*, McBride, Confusion in the Concept of Equitable Adjustments in Government Contracts, 22 F.Bar Jrnl. 235 (1962).

business community and on our statute, is that he who retains money which he ought to pay to another should be charged interest upon it. The difficulty is that it cannot well be said one ought to pay money, unless he can ascertain how much he ought to pay with reasonable exactness. Mere difference of opinion as to amount is, however, no more a reason to excuse him from interest than difference of opinion, whether he legally ought to pay at all, which has never been held an excuse. * * * So, if there be a reasonably certain standard of measurement by the correct application of which one can ascertain the amount he owes, he should equally be held responsible for making such application correctly and liable for interest if he does not.

The ability to ascertain the amount payable with reasonable certainty is of primary importance if there is to be a recognized liquidable sum upon which prejudgment interest can be computed. Well kept cost figures existed in this case for all contract input, including those relating to the changed conditions, as of June 18, 1964. Defendant was free to inspect these records and the District Court found them generally acceptable. It also found that plaintiff did not pad the job with unreasonable costs and that the costs incurred correlated in a general way with the changed conditions.[17] Under these circumstances, one can conclude that at a minimum, the defendant, had it chosen to inquire, could have determined at least the upper limit of its liability with reasonable certainty.[18]

If defendant had acted upon the possibilities presented herein, a fixed and determinate amount could have been tendered[19] and interest stopped. The amount of the claim was known or readily determinable. Valiga v. National Foods Co., 58 Wis.2d 232, 254, 206 N.W. 2d 377, 389 (1973).

Defendant argues a "genuine dispute" regarding the amount due eliminates reasonable certainty, thus thwarting payment of prejudgment interest. Congress Bar & Restaurant, Inc. v. Transamerica Insurance Co., 42 Wis.2d 56, 165 N.W.2d 409. By accepting this argument, we are faced with the danger of encouraging defendant to understate liability on clearly due and payable claims in order to create bargaining leverage as to such claims.[20] Dahl v. Housing Authority of City of Madison, 54 Wis.2d 22, 194 N.W.2d 618. If the requirement is a mere fact of disagreement concerning the amount due, this sham type operation of putting the amount into dispute would eliminate a right to interest on items clearly established, obviously due and clearly payable without resorting to litigation. Dahl v. Housing Authority of City of Madison, supra; Laycock v. Parker, supra.

As the exculpatory clauses have not and should not be interpreted to restrict the application of the changed conditions clause, Fattore Co. v. Metropolitan Sewerage Commission of Milwaukee, supra, so the raising of a dispute where no "genuine" dispute exists should not deny one the interest due him. We find the District Court was correct in determining the sum liquidable or liquidated and subject to prejudgment interest. A liquidable claim should draw interest from the date payment was due, and at the time all the accounting data was

---

17. See note 8, supra.

18. Reasonably certain standards of measurement of less precision than the records existing in this case have been upheld for determining that a liquidable sum existed. See, Necedah Mfg. Corp. v. Juneau County, 206 Wis. 316, 237 N.W. 277, 283, 240 N.W. 405, where determination of the liquidable sum was left to the inquiry and judgment of real estate experts.

19. After liability was determined, defendant did very little to facilitate ascertaining quantum. It chose instead, by the arguments presented herein, to continue a strategy of avoiding liability.

20. The opposite danger [not present in this case] also exists of encouraging plaintiff to overstate claims as a bargaining tool for pretrial negotiations. Dahl v. Housing Authority of City of Madison, supra.

**8**

available to make the determination. In this case the final payment date was June 18, 1964,[21] not the date first demand was made.

Accordingly, the judgment of the District Court is

Affirmed.